SCHNACK *v.* APPLIED ARTS CORP.

1. CONTRACTS—RULE OF ACTION BETWEEN PARTIES.
   A contract becomes the rule of action between the parties to it and governs their rights and is enforceable if it is not contrary to law.

2. PATENTS—CONTRACTS—ROYALTIES.

A contract to pay a royalty for leave to manufacture an unpatented invention is valid and enforceable.

3. SAME—LICENSES—ROYALTIES.

A licensee of the right to use an invention or device under a patent cannot escape liability for royalties contracted to be paid though it turns out the device was not in fact patentable and not covered by the patent as the licensee is estopped from denying the validity of the royalty contract.

4. ESTOPPEL—CONTRACTS.

A licensee cannot accept the benefits of a contract and, when called upon to perform its duties under it, repudiate it as made without right or as wanting in force if it is not actually a violation of law or wholly void.

5. SAME—AUTHORITY.

The assignee or licensee of any right, accepted and acted under, may accordingly be estopped to deny the authority from which the right proceeds.

6. PATENTS—ESTOPPEL OF LICENSEE.

A licensee who made and sold scooters under royalty contract cannot deny the title of its licensor and retain the profits to its own use.

7. SAME—INVALIDITY OF PATENT—LICENSES—ACCOUNTING.

The fact that a patent is invalid does not render sales of the invention claimed to have been patented illegal so as to taint with illegality the obligation of the licensee to account for royalties.

8. SAME—ESTOPPEL—CO-OWNERSHIP BY LICENSOR.

Licensee of right to make patent may not defeat licensor's right to recover royalties upon ground latter was only a co-owner in the invention or in the application for patent filed in the patent office.

9. SAME—LICENSES BY ONE OF SEVERAL CO-OWNERS.

A license granted by one co-owner of a patent is valid as against the licensor and his co-owners, and the licensee is liable to the licensor for the agreed price, but he is not liable to the other co-owners, unless otherwise stipulated.

10. Same—License Before Issuance of Patent.

   A license may be given before issuance of a patent, and, if without restrictions, and if acted on as applying to the invention, will protect the licensee in its use after the patent is granted.

11. Same—Royalty Contract Before Issuance of Patent.

   Royalty contract between inventor and manufacturer executed prior to issuance of patent was a valid contract in its inception.

12. Same—License by Co-Owner—Validity of Royalty Contract —Failure of Consideration.

   Royalty. contract between co-owner of patent and defendant manufacturer, entered into before issuance of patent, *held,* not invalid for failure of consideration because co-owner represented he was the owner of the invention and of the application filed for letters patent since licensee was fully protected in its right to use the invention.

13. Same—Accounting—Royalties—Prosecution of Application in Patent Office—Termination of Contract.

   Failure of co-owner of invention and application for letters patent to prosecute application pending in patent office with due diligence *held,* no defense to suit for accounting for royalties accruing under agreement licensing defendant to manufacture scooters where licensee had failed to terminate agreement in accordance with provisions contained therein for that purpose.

Appeal from Kent; Perkins (Willis B.), J. Submitted January 6, 1938. (Docket No. 62, Calendar No. 39,768.) Decided February 25, 1938. Rehearing denied April 4, 1938.

Bill by Henry C. Schnack against Applied Arts Corporation, a Michigan corporation, for an accounting on a licensing contract and other relief. Decree for plaintiff. Defendant appeals. Affirmed.

*Allaben & Wiarda,* for plaintiff.

*Glenwood C. Fuller,* for defendant.

POTTER, J. August 18, 1934, defendant entered into a written contract with plaintiff, a copy of which is annexed hereto.* March 13, 1936, plaintiff filed a bill of complaint against defendant for an account-

---

\* CONTRACT

This agreement made and entered into this 18th day of August, A. D., 1934, between Henry C. Schnack, residing at Grandville, Michigan, hereinafter called the ''licensor'' and the Applied Arts Corporation, a corporation organized under the laws of the State of Michigan, having its principal office at Grand Rapids, Michigan, hereinafter called the ''licensee,'' witnesseth:

Whereas, The licensor has invented a certain scooter for which the licensor has ordered prepared an application for letters patent in the United States patent office at Washington, D. C., which application has been executed and filed, the serial number of which is 642586.

Whereas, the said licensee is desirous of securing the exclusive right to manufacture and sell said scooter in and throughout the United States of America and its territories.

Now therefore, for and in consideration of the premises and the mutual considerations hereinafter set forth, the parties hereto have agreed and do hereby agree as follows:

I.

The licensor grants unto the licensee the exclusive right to make and sell in and throughout the United States of America and the territories thereof, scooters embodying said invention or any improvements on the same or modifications thereof from this date forth to the end of the life of any patent or patents that may be hereafter granted pursuant to application or to any subsequent applications upon improvements upon said scooter or modifications thereof.

II.

The licensee agrees:

(a) Either directly or through sub-licensees to engage in the manufacture and sale of said scooters and to use reasonable efforts to advertise, make known to the trade and supply the demand for said scooters.

(b) To pay the licensor a royalty of 5 per cent. of the net selling price on each scooter which shall be sold by said licensee and paid for by the person to whom it is sold, which shall be sold by or under the authority of the licensee during the life of this agreement.

(c) To keep full and true records of all sales of said scooters and to permit the licensor to have access to its books and records concerning sales of said scooters at all reasonable times hereafter during the life of this agreement.

ing, payment to him of the amount found due upon such accounting, and other relief. Defendant answered, admitting it had refused to pay royalties and sought to justify nonpayment, claiming the contract had been violated by plaintiff, it had been de-

---

(d) To pay the above stipulated royalty to licensor as follows: On or before the 15th day of each month licensee shall pay to licensor the royalty upon all scooters paid for during the preceding calendar month.

(e) To mark all scooters "patent applied for" until the patent shall have issued and thereafter to mark all scooters "patented" together with the number of the patent.

(f) To purchase and take over from the licensor under the terms and conditions hereinafter set forth the following:

| | |
|---|---|
| 70 pcs. | Foot board assembly |
| 142 pcs. | Steering yoke |
| 992 pcs. | Foot board |
| 815 pcs. | Back roller bracket |
| 1705 pcs. | Carriage bolt & nut |
| 220 pcs. | Roller assembly |
| 524 pcs. | Roller |
| 460 pcs. | Roller pin |
| 5600 pcs. | Cotter key |
| 4425 pcs. | Roller clamp |
| 4275 pcs. | Pin |
| 120 pcs. | Steering post assembly |
| 249 pcs. | Yoke for handle |
| 1003 pcs. | Steering post |
| 2700 pcs. | Steering post rivet |
| 445 pcs. | King pin |
| 720 pcs. | King pin cotter key |
| 315 pcs. | Handle |

One set of dies for manufacturing the following parts:

Steering yoke
Back roller bracket
Handle yoke
Front roller bracket
Roller clamp

All dies, tools and parts being of the estimated value of $775.

Licensee will pay to licensor upon the signing of this contract $75 approved H. O. Schnack; $150 to be paid 30 days after the date of signing and $550 to be paid 60 days after the date of signing of this contract.

### III.

The licensor agrees to use reasonable diligence to obtain the issuance of the patent aforesaid and will at all times defend and keep harmless the licensee from the use of said invention and from any

ceived and defrauded into making it, and it was without consideration. Defendant asked, by way of cross-bill, that plaintiff be required to pay it the sum of $775, plus $23.60, with interest, and that it have a lien on the dies, tools and remaining or substituted parts which defendant contracted to purchase from

---

claim made by other parties for infringement or damages of and for the use of said appliance.

The right is further granted to the licensee to stamp, designate and advertise said scooter under such name, design or appellation as licensee shall see fit.

In consideration of the exclusive license to it granted, licensee agrees that it shall be obligated for royalties in an amount not less than $500 a year.

### IV.

In the event that the licensee shall not faithfully perform any and all the obligations by it to be performed under this agreement, the licensor shall have the right to terminate and cancel this agreement if the default shall continue for more than 30 days after written notice thereof to the licensee. The cancellation by the licensor shall not release the licensee from its obligation to pay the minimum royalties accrued prior to such cancellation.

The licensee shall have the right to terminate this agreement at any time hereafter on 90 days' written notice to the licensor, such written notice to be deemed sufficient if given to Henry C. Schnack or, in the event of his death, to Mabel B. Schnack by sending said notice through United States mails.

In the event of such termination by the licensee it shall have a reasonable time in which to dispose of such scooters as it shall have manufactured and have on hand at the time of such cancellation.

If within two years from the date of this contract no patent is issued, nor have any claims been allowed assuring the issuance of a patent, in that event this license shall be void and the licensee, having paid for the dies, tools and fixtures by that time may retain the same for its own use as it sees fit.

In Witness whereof the said Henry C. Schnack has executed the above and foregoing contract under his seal and Applied Arts Corporation has caused these presents to be executed by its president and attested by its secretary under the seal of said corporation, this 18th day of August, A. D. 1934.

HENRY C. SCHNACK,

(Seal)

APPLIED ARTS CORPORATION,

By R. F. DEBOER,

President.

Attest:

MARGARET GILLISSE,

Secretary.

plaintiff under the contract, and for other relief. From a decree for plaintiff substantially as prayed, defendant appeals.

Defendant contends plaintiff may not recover herein because, as shown by the records of the United States patent office, he was only a joint owner in the pending application for patent to cover his claimed invention. The contract between plaintiff and defendant recites the licensor has invented a certain scooter and has ordered prepared and filed an application for letters patent in the United States patent office, which application has been executed and filed.

Under the law, a contract becomes the rule of action between the parties to it and governs their rights and is enforceable if it is not contrary to law. A contract to pay a royalty for leave to manufacture an unpatented invention is valid and enforceable. *Hamilton* v. *Park & McKay Co.*, 112 Mich. 138; *Perfection Socket Co.* v. *American Forging & Socket Co.*, 222 Mich. 396; *Carter* v. *Marvel Carburetor Co.*, 263 Mich. 48. A licensee of the right to use an invention or device under a patent cannot escape liability for royalties contracted to be paid though it turns out the device was not in fact patentable and not covered by the patent (*Strong* v. *Carver Cotton Gin Co.*, 197 Mass. 53 [83 N. E. 328, 14 L. R. A. (N. S.) 274, 14 Ann. Cas. 1182]; *Bancroft* v. *Union Embossing Co.*, 72 N. H. 402 [57 Atl. 97, 64 L. R. A. 298]), because the licensee is estopped from denying the validity of the royalty contract. *Hall Manfg. Co. of Grand Rapids* v. *American Railway Supply Co.*, 48 Mich. 331; *Forncrook Manfg. Co.* v. *E. T. Barnum Wire & Iron Works*, 54 Mich. 552; *Eureka Co.* v. *Bailey Co.*, 11 Wall. (78 U. S.) 488.

A licensee cannot accept the benefits of a contract and, when called upon to perform its duties under it,

repudiate it as made without right or as wanting in force if it is not actually a violation of law or wholly void. The assignee or the licensee of any right, accepted and acted under, may accordingly be estopped to deny the authority from which the right proceeds. The licensee made and sold the scooters under its royalty contract with plaintiff. It can no more be allowed to deny the title of plaintiff, and retain the profits to its own use, than an agent who has collected a debt for his principal can insist on keeping the money upon an allegation that the debt was not justly due to the principal. The fact that a patent is invalid does not render the sales of the invention claimed to have been patented illegal so as to taint with illegality the obligation of the defendant to account. Bigelow on Estoppel (6th Ed.), pp. 597, 598. Defendant, as a licensee of the device in question, may not defeat plaintiff's right to recover upon the ground that plaintiff was only a co-owner in the invention or in the application for patent filed in the United States patent office. The authorities fully sustain the rule set forth in 48 C. J. p. 263, where it is said:

"A license granted by one co-owner of a patent is valid as against the licensor and his co-owners, and the licensee is liable to the licensor for the agreed price, but he is not liable to the other co-owners, unless otherwise stipulated. Nor can the co-owners recover such sum from the licensor, in the absence of an agreement to divide moneys received, although early decisions intimated that such recovery might be had."

The license may be given before issuance of a patent, and, if without restrictions, and if acted on as applying to the invention, will protect the licensee in its use after the patent is granted. 48 C. J. p. 264.

The contract was a valid contract in its inception. *Hamilton* v. *Park & McKay Co., supra;* 48 C. J. p. 264. The invalidity alleged by the defendant arises out of its contention that plaintiff represented he was the owner of the invention and of the application filed for letters patent when, in fact, he was but a co-owner. Notwithstanding defendant's claim, it was fully protected in its right to use the invention.

· Defendant claims there was a failure of consideration for the contract. That cannot be sustained for the same reason, that is, the contract was valid and, enforceable in its inception and fully protected defendant in its manufacture of the invention covered thereby.

Defendant claims it ought not to be compelled to respond in this proceeding to plaintiff for the reason that plaintiff himself violated the contract in that he did not prosecute the application pending in the United States patent office with due diligence. This is no defense to liability. The contract stipulates that the licensee shall have a right to terminate this agreement "at any time hereafter on 90 days' written notice to the licensor;" that in the event of termination of the contract, it shall have a reasonable time in which to dispose of such scooters as it shall have manufactured and have on hand at the time of such cancellation; that if within two years from the date of the contract, no patent is issued nor any claims allowed assuring the issuance of a patent, in that event, the license shall be void and the licensee, having paid for the dies, tools and fixtures by that time, may retain the same for its own use as it sees fit. Defendant did not exercise its right to terminate the agreement at any time. It permitted it to run. It manufactured and sold scooters there-

under.  It is liable to account to plaintiff for the royalties accruing under the contract.

Decree of the trial court affirmed, with costs to plaintiff.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.