Louise W. GESING and St. Stanislaus Novitiate of Parma, Ohio, Plaintiffs-Appellees,

v.

GRAND RAPIDS HARDWARE COMPANY and Detroit Hardware Manufacturing Company, Defendants-Appellants.

No. 16588.

United States Court of Appeals
Sixth Circuit.

June 24, 1966.

**364**

Everett L. Huizenga, Grand Rapids, Mich., Price & Heneveld, Grand Rapids, Mich., on brief, for defendants-appellants.

William K. Van't Hof, Grand Rapids, Mich., McCobb & Heaney, Grand Rapids, Mich., on brief, for plaintiffs-appellees.

Before CELEBREZZE, Circuit Judge, CECIL, Senior Circuit Judge, and BOYD,* District Judge.

BOYD, District Judge.

This appeal is from the granting of a motion for summary judgment in an action for an accounting and for the recovery of royalties allegedly due under a licensing agreement. The original parties to the agreement were John H. Gesing, the inventor of a door exit hardware device known as a panic exit lock, and the Detroit Hardware Manufacturing Company, hereinafter referred to as Detroit, which company is not to be confused with the defendant in this case, which is a name-holding corporation only. The other defendant herein, Grand Rapids Hardware Company, purchased Detroit in January, 1962, and is its successor in interest under the licensing agreement. The plaintiffs herein are the widow and charitable remainderman of Gesing, who died on April 2, 1961.

Only a condensed statement of the facts surrounding this controversy is necessary to the determination of this appeal. On July 1, 1952, Mr. Gesing entered into an informal agreement with Detroit whereby the latter was to develop, manufacture, pay royalties on, and file any patent applications on Gesing's invention. The invention went into production soon thereafter, and the parties operated under this informal agreement until February 28, 1955, at which time they executed the licensing agreement which is at issue herein. This second agreement sets out in a more formal manner all of the provisions of the first, together with numerous other provisions not relevant here, and by its terms relates back to the date of the execution of the original agreement, July 1, 1952.

On March 5, 1953, following the execution of the informal agreement, Detroit filed an application for letters patent on the panic exit lock device in the name of Gesing and one Deane N. Jewett, an employee of Detroit who had assisted in the development of the device. This application contained 27 broad claims of invention, drafted in such a way as to encompass not only the Gesing device, but the general field of invention to which it was related. A patent was not issued until February 25, 1958, and it covered only one of the 27 original claims; however, the parties admit that this one claim was of greater significance than any other contained in the application.

By the time the patent was granted, Detroit's production had been expanded to include three types of panic exit locks, known respectively as the series 100, series 200, and series 201. The licensing agreement was later amended on February 8, 1960 to provide for royalty payments to Gesing on each series. It is admitted by the parties that all three series of panic exit lock structures now being manufactured by appellants falls within the scope of the patent application, but that only the series 100 device falls within the scope of the single claim on which the patent was actually granted.

At all times up to the present, the appellants have paid royalties to Gesing or to his estate on the series 100 struc-

* MARION S. BOYD, Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation.

tures according to the terms of the licensing agreement, and do not here deny their obligation to continue paying same. The appellants also paid royalties on the series 200 and series 201 structures until November 30, 1962. Then, on April 4, 1963, appellants formally notified Gesing's widow that no further royalties would be paid on these last two structures because they were not covered by the issued patent and did not, therefore, fall within the purview of the licensing agreement. The appellees' ensuing demand for an accounting and for payment of royalties allegedly due was refused by the appellants, and this action was instituted on March 16, 1964.

The appellees contend that the licensing agreement provided for payment of royalties to Gesing on all panic exit locks manufactured and sold by Detroit and by its successor in interest, Grand Rapids Hardware Company, which were described in the patent application as well as the issued patent, and that the licensing agreement should be enforced according to the plain meaning of its terms. The appellants contend that the intention of the parties was something other than that expressed in the agreement, and that this intent may be established by extrinsic evidence; the meaning they thus seek to establish being that Gesing and Detroit contemplated the payment of royalties on the series 100 panic exit locks only. The appellants further contend that the claims of the patent application were merged with the patent which was granted on February 25, 1958, that the former ceased to have any existence apart from the latter beyond that date, and that the patent application could not, once its claims had been merged out of existence, form the subject matter of the licensing agreement herein. Still further, appellants apparently contend that Paragraph IV of the licensing agreement, hereinafter set out, cannot be enforced in the manner urged by appellees without effecting an automatic breach of Paragraph II(a) of the agreement, which sets out Gesing's covenants and representations of sole ownership of all claims in the patent application, and that no interpretation may be given to a contract which forces an automatic breach of its own provisions.

The sole issue presented on this appeal is whether appellants are bound by the terms of the licensing agreement to pay royalties on series 200 and series 201 panic exit locks which are described in the patent application alone, and not in the issued patent. This is a question of law involving the interpretation of a contract, and is, therefore, one properly raised by and disposed of on a motion for summary judgment. Dunnington v. First Atlantic Bank of Daytona Beach, 195 F.2d 1017 (CA 5, 1952).

The answer to this question is to be found at many points in the licensing agreement, most notably in Paragraph IV thereof, as amended on February 8, 1960, which provides that:

"Detroit shall pay to Gesing a royalty of One and 50/100 ($1.50) on *each panic exit lock manufactured and sold by Detroit and its sub-licensees which falls within the scope of the claims of any Letters Patent or Application for Letters Patent included in this agreement,* except for No. 200 series panic exit lock, and a royalty of 75/100 Dollars ($.75) *on each 200 series panic exit lock and No. 7-201-8 panic exit lock as manufactured and sold by Detroit and its sub-licensees which falls within the scope of the claims of any Letters Patent or Applications for Letters Patent included in this agreement.* Said royalties shall continue for a period of fifteen (15) years from the date hereof."

The provisions emphasized above leave no doubt as to what constituted the subject matter of the contract between the parties, and as to what structures or devices for which royalties were to be paid: series 100, series 200, and series 201 (or No. 7-201-8 as it is referred to in Paragraph IV). Accordingly, the licensing agreement must be enforced by its terms.

The appellants' contentions are without merit because they are not supported by the provisions of the licensing agreement or by principles of general law. The rule is well settled that where the provisions of a contract are clear, and free of any ambiguity or uncertainty of meaning, no reference will be had to evidence outside the agreement to determine its meaning. Calderon v. Atlas Steamship Co., 170 U.S. 272, 280, 281, 18 S.Ct. 588, 42 L.Ed. 1033 (1897); Baldwin Rubber Co. v. Paine & Williams, 107 F.2d 350 (CA 6, 1939); New Wrinkle, Inc. v. John L. Armitage & Co., 238 F.2d 753 (CA 3, 1956). Furthermore, to agree with appellants' contention that all the claims of the patent application which were not taught by the patent passed out of existence and lost all meaning as the proper subject matter of a contract, is to supply terms to the licensing agreement which it did not contain and which would defeat or substantially impair the meaning of the existing provisions. The task of drafting this licensing agreement was completely within the control and discretion of the contracting parties at all times, and neither side can be heard to deny the effect of the bargain. Appellants' final contention is apparently premised on the notion that the granting of a patent on one or more, but not all the claims set out in the application therefor, operates as a forfeiture by the applicant for the patent of all right, title and interest in the claims not granted. In our view, it would be the assertion of contrary ownership by a third party, and not the decree of the patent office, which would defeat any of the covenants and representations of ownership made by Mr. Gesing in the licensing agreement. Simply because patents were not granted on all devices falling within the scope of the claims of the patent application does not necessarily mean that those claims were incapable of being owned. Schnack v. Applied Arts Corp., 283 Mich. 434, 440, 278 N.W. 117 (1938).

Finding no reversible error, the judgment of the district court is affirmed.