# Fields *v.* Karter.

*Action of Trespass on the Case.*

|121  329|
|s130  434|

1. *Equitable interest in land, sufficient to support mortgage of cotton grown thereon.*—A purchaser of land who receives possession and a deed of conveyance from his vendor, has a distinct and substantial interest in the land, which will support a mortgage given by him to secure payment of the purchase money, on cotton to be grown thereon, although the land is by mistake misdescribed in the deed; and the lien of the mortgage will prevail over the title of the purchaser from the mortgagor of the cotton so grown.

2. *Evidence must correspond to the terms of the complaint to justify a verdict for plaintiff.*—Under a complaint which alleges that the defendant "did buy and receive" cotton upon which plaintiff had an equitable lien, it is essential to recovery that the jury should be reasonably satisfied that he both bought and received the cotton.

3. *Same.*—Where the complaint alleged that the defendant did buy and receive cotton on which plaintiff had a lien because grown on a certain place, and the evidence was conflicting as to whether the defendant bought the cotton, and also as to whether it was grown on the place mentioned, charges requested by the plaintiff which asked a verdict for him if the evidence showed receiving only, and charges which asserted that the plaintiff had a lien were properly refused.

4. *Execution of deed and mortgage; when parts of same transaction.*—A charge which asserted that the execution of a deed and mortgage were parts of one and the same transaction should have been given on request of plaintiff, when the evidence showed that the land embraced therein was sold by plaintiff to a vendee and the deed and mortgage executed at the same time and delivered by each to the other in immediate succession, the deed to the vendee and the mortgage to the plaintiff.

5. *Purchaser from mortgagor, not his bailee.*—If a mortgagor delivers to another, under contract of sale, cotton which he had mortgaged, the person receiving the cotton is in no sense the bailee of the mortgagor, whether he is a purchaser for himself or as agent for another, or merely receives and pays for it, as such agent, after purchase made; and a charge that

[Fields v. Karter.]

the purchaser or receiving agent when sued by the mortgagee for the cotton, could make no defense other than that which the mortgagor could make, is erroneous.

6. *Amendment to complaint allowed after evidence in.*—An amendment to the complaint which presents a good cause of action and which there is evidence before the jury tending to support, should be allowed "after the evidence was through and before the charge of the court."

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

A. E. Fields sued J. H. Karter to recover damages from him for buying and receiving cotton on which Fields had a lien. The evidence tended to show that the cotton was grown on the "Archie Place," a plantation of land sold by the plaintiff to one Persall, and on which and on the cotton grown thereon the plaintiff had a mortgage from Persall to secure the purchase money. It further tended to show that Persall disposed of certain bales of the cotton to Karter, but the evidence was in conflict as to the circumstances of the transactions. There were tendencies of the evidence to the effect that one W. H. Jones was the purchaser of the cotton and gave "tickets" to the seller who received his money from the defendant, and that Jones was paid a salary by the defendant, Karter; there were also tendencies of the evidence that Jones was in the employ of Smith and Coughlan, who were a firm of cotton buyers residing and doing business in Birmingham, and that Karter was the agent or cashier of the said firm in paying for the cotton bought by Jones. It was not directly proved that the cotton was grown on the "Archie Place," but that was matter of inference. The charges 1, 2, and 3 requested by the plaintiff and refused presented the point that if Karter received and shipped the cotton he was liable. Charge No. 4 refused to plaintiff, asserted that the mortgage if unpaid was a lien on the cotton and that Karter had notice of it. Charge 5 refused to plaintiff asserted the same as four, and further that if Karter did anything to interfere with the plaintiff's lien the jury must fine for the plaintiff. Charge 9 refused to plaintiff asserted that it made no difference how Karter was acting, for himself or for Smith & Coughlan, or for any one else

·if he took possession of the cotton and shipped it to Bir-
mingham from Cullman, and the jury believed that
Fields had a lien on it then they must find for the plain-
tiff.   Charge 8 requested by plaintiff and which the
court say should have been given, asserted that the exe-
cution of the note and mortgage was part of one and
the same transaction.   The defendant offered an amend-
ment after the evidence was closed and before the general
charge was given.   Charge 10 asserted that Karter was
the bailee of Persall, the mortgagor, and could make no
defense which Persall could not make.   Errors were as-
signed on the rulings of the court as shown in the
opinion.

GEO. H. PARKER, for appellant.
COFER & BROWN and S. T. WERT, contra.

McCLELLAN, C. J.—This is an action of trespass on
the case prosecuted by Fields against Karter.   The com-
plaint upon which the trial was had is as follows:
"Plaintiff sues to recover of the defendant the sum of
one thousand dollars, and for cause of action alleges the
following:   Plaintiff was at the time hereinafter com-
plained of and is now the owner and holder of a mort-
gage   executed   to   him   by   one   J.   M.   Persall
and   wife,   J.   R.   Persall,   on   or   about   the
18th day of August, 1890, and duly recorded," etc.,
"which was executed to secure a *bona fide* indebtedness
of $800 then and there contracted with plaintiff, and
which remains unpaid in part to this day.   And said
mortgage besides conveying legal title to other property,
conveyed to plaintiff the equitable title in and to all the
crop of cotton raised or caused to be raised by the said
J. M. Persall during the year 1892.   Said Persall raised
cotton during the year 1892, which cotton was subject
to plaintiff's said mortgage and equitable lien; and the
defendant with knowledge or notice of plaintiff's lien
thereon, did buy and receive, within one year before the
commencement of this action, seven bales of said cotton
of the value of three hundred dollars, which said cotton
he sold and removed, or caused to be removed beyond
plaintiff's reach, or caused the same to be so mixed with

other cotton as to be indistinguishable therefrom, by reason of which said acts of defendant, plaintiff is prevented from enforcing his said lien thereon under his mortgage; and by the aforesaid wrongful acts of the defendant, which were done without plaintiff's consent, the lien of plaintiff in said cotton has been destroyed to his great damages; hence this suit."

Plaintiff introduced in evidence a mortgage executed to him on August 18, 1890, by Persall and wife covering certain 159 79-100 acres of land in Cullman county, and crops of cotton to be grown thereon in certain years including 1892, and proved that Persall raised from seven to nine bales of cotton on this land in 1892, that he hauled as many as six bales of cotton from this land during the fall and early winter of that year, that these six bales were paid for by the defendant either for himself or as agent for a Birmingham cotton firm and that they were shipped to said firm by the defendant. The points of main controversy in the case were two only: *First,* whether plaintiff acquired any lien on the cotton by virtue of the mortgage, and, *second,* whether Karter bought and received the cotton and removed it out of plaintiff's reach as averred in the complaint. And as to the first inquiry it is insisted that Persall had no such interest in the land when the mortgage was executed in 1890 as would enable him to vest in the mortgagee an equitable title to crops to be raised in 1892. The evidence as to Persall's interest was as follows: The land constituted a farm known as the "Archy place." Fields bought it from Archy, and while the latter was still in possession of it holding it for Fields, he [Fields] sold the place to Persall, and directed Archy to put the latter in possession, which was done. Fields executed to Persall a deed which was intended to convey this Archy place to him, but by mutual mistake, or the mistake of the scrivener of which neither party was aware at the time one eighty acres of the place was mis-described. The sale being on credit, as soon as this deed was delivered to Persall he executed and deliverd the mortgage to Fields to secure the payment of the purchase money— both instruments being written and signed at the same time and delivered—first the deed and then the mortgage

[Fields v. Karter.]

back—in immediate succession. The mortgage correctly
describes the land. Upon the consummation of this
transaction, Persall had a right to the immediate posses-
sion of the land, which was immediately vested in him.
The mortgage which perfected this right also in terms
vested the equitable title to the subsequently raised cot-
ton in Fields, and it is therefore to be taken that Persall
had the right to immediate possession at the moment this
equity to the cotton passed. He then also had the fur-
ther right to a correction of Fields' conveyance of the
land to him, the absolute right to have Fields execute to
him a conveyance to that part of the Archy place which
had by mutual mistake been omitted from, or incorrectly
described in the deed which Fields had executed. It is
to be assumed that Fields would have recognized this
right and at once have voluntarily executed a proper
conveyance; but if he refused, Persall had a plain
remedy in chancery to effectuate his right to have a
proper and correct deed to the land he had purchased.
Reaffirming the doctrine of *Paden & Co. v. Bellinger &
Ralls*, 87 Ala. 575, it is yet clear to us that this case does
not fall within that principle, but that Persall's rights
existing at the moment the mortgage was executed to a
perfect deed to the Archy place and to the immediate
possession thereof constituted a distinct and substantial
equitable interest in the land quite sufficient to support
the mortgage of crops to be grown thereon in subsequent
years. One of our cases goes much further than this,
and probably too far.—*Hurst & McWhorter v. Bell &
Co.*, 72 Ala. 336.

The evidence showing this sufficient interest in Per-
sall was free from conflict or adverse inferences. The
court might have charged the jury affirmatively upon it
on the hypothesis of their belief of the evidence. And
there being no controversy in the case as to Persall's in-
terest in the whole of the Archy place, the inquiry as to
whether the cotton in question was grown upon one or
another part of that place, was immaterial and testi-
mony should not have been received upon it. Upon the
same considerations the first, second and third charges
given for defendant must be held to have been abstract,
confusing and misleading, and therefore, improperly

given, though as they asserted a correct proposition of law the judgment would not necessarily be reversed on account of them.

The complaint alleging that Karter "did *buy* and receive" the cotton upon which plaintiff had an equitable lien, it was essential to recovery that the jury should be reasonably satisfied that he both bought and received the cotton. The evidence was clear that he *received* cotton from Persall which the testimony tended to show was grown on the Archy place—the land described in the mortgage; but there was a conflict in or conflicting inferences afforded by the evidence as to whether he bought the cotton, one phase of the evidence going to show that one Jones as the agent of and being paid for his services by Smith & Coughlan purchased the cotton and that Karter as their agent or cashier paid for it with their funds and shipped it to them. Then too it was not directly proved that the cotton which Persall sold was raised on the Archy place, but that was matter of inference. On this state of case, the court very properly refused to give the several affirmative charges requested by plaintiff, and also charges 1, 2, 3, 4, 5, and 9.

Charge 8 should have been given for plaintiff: The execution of the deed and mortgage respectively were parts of one and the same transaction on the uncontroverted evidence.

Karter on no aspect of the evidence was Persall's bailee. This consideration suffices to condemn plaintiff's tenth charge.

If the refusal of the court to allow the proposed amendment of the complaint was error, it cannot be said not to have prejudiced the plaintiff. The purpose of the amendment was to meet that phase of the evidence which tended to show that though Karter did not buy Persall's cotton he yet received and shipped it with notice of plaintiff's lien and thereby deprived plaintiff of the benefit of his lien, a state of facts which was not counted on, as we have seen, in the original complaint. There was evidence before the jury tending to support this amended count at the time it was offered; and it is immaterial whether it was adduced by plaintiff or by defendant. The proposed count presented a good cause of

action. The refusal to allow it to be filed is not therefore brought within the principles declared in *Beavers v. Hardie & Co.,* 59 Ala. 570 ; but was, we think, in violation of the statute as it has been liberally construed by this court.—*Springfield Fire & Marine Ins. Co. v. DeJarnett,* 111 Ala. 248, and authorities there cited.

We deem the foregoing a sufficient expression of our views upon this case for the purposes of another trial, without considering and discussing in detail rulings of the trial court on the admissibility of testimony, etc., etc.

Reversed and remanded.