197 So. 347

CALLAHAN v. AUBURN PRODUCTION CREDIT ASS'N.

5 Div. 311.

Supreme Court of Alabama.

May 16, 1940.

Rehearing Denied June 29, 1940.

Will O. Walton and D. W. Jackson, both of Lafayette, for appellant.

R. E. Spivey, Jr., of New Orleans, La., Jacob A. Walker, of Opelika, C. E. Fuller, Jr., of Lafayette, and E. F. Steiner, of New Orleans, La., for appellee.

106

Wm. Alfred Rose and Bradley, Baldwin, All & White, all of Birmingham, amici curiae.

BROWN, Justice.

This bill, filed July 31, 1939, by a mortgagee against three separate purchasers from the mortgagor of different chattels alleged to be covered by the mortgage in several separate and distinct transactions on different dates, seeks to recover a money decree for damages suffered by the complainant in consequence of the destruction of the complainant's title, when it had acquired the legal title by the mortgage or otherwise, and the destruction of alleged equitable liens to property in which the bill conceded the complainant did not have the legal title.

The several defendants named are F. H. Callahan, the appellant here, A. H. Singer and Bragg-Compton, Incorporated, and the officers of said corporation, none of whom are parties to this appeal.

The appeal is from a decretal order overruling Callahan's demurrer to the bill, taking the points that the bill is without equity, is multifarious, and as to the after acquired property the mortgage conferred on the mortgagee no right, title or interest.

The mortgage was executed by Russell Walker, not made a party to the bill, on the 11th of July, 1938, to the complainant to secure an indebtedness created by a loan of money, made contemporaneously with the execution of the mortgage, and "any other indebtedness of the mortgagor to the mortgagee or its assigns, incurred within twelve months from the date thereof."

The bill alleges that "said mortgage included forty-three (43) specifically described head of livestock located on 120 acres owned by the mortgagor and on 1000 acres rented by him from the Alabama Power Company, both tracts being in Tallapoosa County, Alabama and being in fact adjoining places." The mortgage also recites that "Intending to convey and hereby conveying all livestock and other property of like kind or class owned by mortgagor as that hereinabove described, located on or used in connection with the aforesaid land, whether specifically described or not, and also all increase thereof *and additions thereto within twelve months from the date thereof.*" [Italics supplied.]

The chattels alleged to have been purchased by Callahan consisted of fifty-eight head of cattle of the value of not less than $969, and purchased during the months of August, September and November of the year 1938, for which he gave his check, in some instances indicating · thereon the number of cattle so purchased, and in others not so designating.

In addition to the livestock on the eleven hundred and twenty acres at the time the mortgage was given, the bill shows that Walker purchased others, for some of which he gave a bill of sale to the mortgagee purporting to convey to it the legal title, and others so purchased no bill of sale was given, but they were purchased and turned on to said lands with others.

The bill expressly avers that the only notice the said Callahan had, was constructive notice arising from the recordation of the mortgage in the office of the Judge of Probate of Tallapoosa County, Alabama.

The bill alleges: "All of the cattle purchased by F. H. Callahan from Russell

Walker were subject to said mortgage. Part of the same were subject to legal mortgage and part to equitable mortgage, but the complainant is unable to allege with particularity which were subject to legal mortgage and which were subject to equitable mortgage and the aid of this court of equity is needed to discover the full facts in this connection. All of said cattle bought by F. H. Callahan from Russell Walker were on said 120 acres owned by Russell Walker or on the 1000 acres rented by the said Russell Walker, in Tallapoosa County, Alabama, or had been on said premises immediately prior to their removal therefrom for sale to F. H. Callahan. The complainant has been informed and believes and on such information and belief avers that part of said cattle, to-wit, those acquired by F. H. Callahan on August 10, 1938 and on November 1, 1938, were delivered to F. H. Callahan on said premises in Tallapoosa County, and that the other cattle were delivered to him at his place of business in LaFayette, Chambers County, Alabama, but if complainant is mistaken in this averment, it alleges that the aid of this court of equity is necessary to discover the full facts as to where the said cattle were delivered to F. H. Callahan. Complainant further alleges that it has been informed and believes and on such information and belief avers that among the cattle so acquired by F. H. Callahan were the following, on which said mortgage operated as a legal mortgage, to-wit: Three of the Lizzie H. Nolen cattle, the J. M. Campbell Jersey cow, the Queen Berry bull; that among the cattle so acquired by F. H. Callahan were the following, on which said mortgage operated as an equitable mortgage, to-wit, two Mask cows, one Mallory cow, two C. F. Jackson cows and a bull bought by Russell Walker from Ray Bairn and a cow bought of Banks, which have not heretofore been mentioned; that said cattle also included one of the C. G. Milner cows, but complainant has not been informed and is not able to aver whether the Milner cow was one of those included in the bill of sale to it or whether it was the cow acquired from Milner on August 2, 1938, to which no bill of sale was made to the complainant. Complainant is informed and believes and on such information and belief avers that F. H. Callahan has sold said cattle acquired by him from Russell Walker and that he has received

therefor amounts equal to or in excess of the amount paid by him therefor to Russell Walker; that said cattle have been slaughtered or otherwise disposed of and are beyond the jurisdiction of this court and complainant's lien and claim on said cattle has been totally destroyed. If complainant is mistaken in its averment that its lien on said cattle has been destroyed, then complainant avers that the aid of this court of equity is necessary for the discovery of said cattle in order that complainant may enforce its claim against the same."

As an incident to and in support of the relief, the complainant seeks discovery of evidence and an accounting.

■ There is an absence of averments showing confidential relations between the complainant and the defendant Callahan, or that the facts essential to the support of the complainant's claim are peculiarly within Callahan's knowledge, and therefore the equity of the bill can not be sustained on the ground that it seeks discovery. Dorrough et al. v. Mt. Pleasant Fertilizer Co., 210 Ala. 530, 98 So. 735; H. H. Hitt Lumber Co. et al. v. Cullman Property Co., 189 Ala. 13, 66 So. 720.

■ As to cattle owned and in the possession of Walker on the eleven hundred and twenty acre tract of land, at the time of the execution of the mortgage and their accretion by the processes of nature, and cattle subsequently purchased, the legal title to which was vested in the complainant by bill of sale executed by Walker or his vendor, the complainant had the legal title, and in the absence of averments showing that the property or some part thereof was in existence in the defendant's possession and subject to the processes of the court for foreclosure of the mortgage, the bill was without equity. Leeth Nat. Bank v. Elrod et al., 233 Ala. 340, 172 So. 104; Meyer Brothers v. Cook, 85 Ala. 417, 5 So. 147.

■ Cattle purchased by Walker after the execution of the mortgage and in which he had no interest at the time he executed the mortgage, was not covered by the mortgage. Mayer & Co. v. Taylor & Co., 69 Ala. 403, 44 Am.Rep. 522.

In the last cited case it was observed: "It is commonly said that a man may sell the wool to be clipped from his sheep at a future time, or the milk his cows may yield in the coming month or year, and the

sale is valid; but not so as to the wool of any sheep, or the milk of any cow which he may acquire at any time in the future, even though it be but the next hour.—Benjamin on Sales, § 78." Mayer & Co. v. Taylor & Co., supra.

This doctrine has been repeatedly reaffirmed by this court. Paden & Co. v. Bellenger & Rales, 87 Ala. 575, 6 So. 351; Shaw et al. v. Kinney, 227 Ala. 170, 149 So. 227.

■ Therefore if the language of the mortgage "also all increase thereof and additions thereto within twelve months from the date thereof" should be construed as intending to embrace cattle purchased by the mortgagor after the execution of the mortgage, it to that extent failed of its purpose.

■ The other defendants, so far as appears from the averments of the bill, were in no way connected with the alleged purchases of cattle by Callahan and in no way interested therein, nor was Callahan interested in or connected with the transactions between Walker and the other defendants. The bill, therefore, was subject to the objection that it is multifarious. Lee et al. v. City of Birmingham, 223 Ala. 196, 135 So. 314. The averments of the bill do not bring it within the liberal provision of the statute.—Code 1923, § 6526.

The circuit court erred in overruling the demurrer of Callahan to the bill.

Reversed and remanded.

THOMAS, FOSTER, and LIVINGSTON, JJ., concur.

## On Rehearing.

BROWN, Justice.

The appellee insists that "the decision [embodied in the foregoing opinion] is inconsistent with every case decided by the Alabama Supreme Court, which cases were relied upon by appellee in drafting its form of mortgage, *but does not expressly overrule those cases or distinguish them*," and the substance of its contention is, that while the opinion states the common law rule, nevertheless a mortgage given on cattle after acquired by the mortgagor in which the mortgagor had neither a present nor potential interest, the identity of which is unknown to the parties to the contract—chattels endowed with independent life and

incapable of a fixed situs—"creates an equitable interest, attaching to the property when it is acquired, or when it comes into existence, that a *court of equity* will enforce and protect against all persons other than bona fide purchasers without notice." This is the doctrine announced in a dictum in Abraham v. Carter, 53 Ala. 8, and reiterated in Hurst & McWhorter v. Bell & Co., 72 Ala. 336, 340, an action on the case for damages for the destruction of an equitable lien arising out of a mortgage on after acquired property in which the mortgagor was without interest, present or potential, at the time the mortgage was given.

That doctrine is in direct conflict with the pronouncement of the court, speaking through Justice McClellan, afterwards Chief Justice, more than a half century ago in the case of Paden & Co. v. Bellenger & Ralls, 87 Ala. 575, 576, 6 So. 351, where it was observed: "This is an action on the case, for the wrongful conversion by John S. Paden & Co. of certain cotton on which appellees, plaintiffs below, claim to have an equitable mortgage. According to the unbroken current of our decisions, as well as by the weight of authority in other states, it is essential to the creation of such an incumbrance that its subject-matter should have a potential existence, as distinguishable from a mere possibility or expectancy on the part of the contracting parties that it will come into being. While the thing itself need not have identity * * * yet it must at least be the product or growth or increase of property which has at the time a corporal existence, and in which the mortgagor has a present interest,—not a mere belief, hope, or expectation that he will in future acquire such an interest."

These utterances were concurred in by Chief Justice Stone and Justices Somerville and Clopton.

That holding has been expressly re-affirmed in the following cases, and the utterances in Hurst & McWhorter v. Bell & Co., supra, criticized, as "probably going too far," being "out of line" with the weight of authority, and finally repudiated. Fields v. Karter, 121 Ala. 329, 25 So. 800; Sellers & Orum Co. v. Hardaway et al., 188 Ala. 388, 66 So. 460; Gilliland Mercantile Company v. Pond Bros., 189 Ala. 542, 66 So. 480; Vinson Bros. et al. v. Finlay, 206 Ala. 478, 90 So. 310, in which, in the aggregate, all the Justices of the court, then incumbent, concurred.

In the case last above cited, it was observed: "Taking that phase and theory of the evidence which is most favorable to the plaintiff, the most that can be said of the contract made in 1915 is that the landlord agreed to rent the land to the tenant for succeeding years if the tenant should desire it, and if they could agree upon the terms, in common parlance, as the landlord himself expressed it, the tenant was to have the refusal of the land on the landlord's terms."

■ The applicable doctrine was thus expressed:

"The general principle is thoroughly well settled that, while the subject-matter of a chattel conveyance need not have identity, nor separate existence, 'yet it must at least be the product, or growth, or increase of property, which has at the time a corporal existence, and in which the mortgagor has a present interest, not a mere belief, hope or expectation, that he will in future acquire such an interest.' Paden v. Bellenger, 87 Ala. 575, 6 So. 351; Sellers [& Orum Co.] v. Hardaway, 188 Ala. 388, 66 So. 460; Gilliland Co. v. Pond Bros., 189 Ala. 542, 66 So. 480, cited in note, L.R.A.1917C, 15. In the last-cited case we said:

" 'It is necessary, however, for the creation of a specific lien on such crops—such as will prevail against third persons who * * * acquire a specific interest therein—that they must be the contemplated product of land in which the mortgagor has a definite present interest, as distinguished from a mere possible or expectant future interest.'

* * *

"The 'present interest' which the principle requires is a present interest in the usufruct period.

"The case of Hurst v. Bell, 72 Ala. 336, which would support the claim of the mortgagee in this case, has been several times criticized as going too far (Fields v. Karter, 121 Ala. 329, 333, 25 So. 800), and as being out of line with the firmly settled doctrine of the later cases. Sellers [& Orum Co.] v. Hardaway, 188 Ala. 388, 66 So. 460; Gilliland Co. v. Pond Bros., 189 Ala. 542, 66 So. 480.

"Upon the considerations above stated, we hold that the plaintiff has showed no right to recover, and that the trial judge should have instructed the jury peremptorily for the defendants, and that the refusal to do so, as requested by them, was error which must work a reversal of the judgment."

As appears from the original opinion, the doctrine of Paden & Co. v. Bellenger & Ralls has been consistently followed down to the present day.

But the appellee insists that the lien or mortgage dealt with in those cases were not equitable liens or mortgages, but were legal mortgages and passed not an equitable but the legal title, although they embraced chattels not in esse when executed. This contention is not only contrary to all the decided cases, but imputes to the illustrious Justices who have constituted this court for a half of a century and who have gone to their reward, leaving behind a reputation for profound ability and a thorough grasp of legal principles, ignorance of legal terminology. This indictment of those illustrious men and jurists requires no further comment.

It is further insisted that the equitable rights or liens arising from such transactions are not cognizable or apparent to a court of law but are the creatures of a court of equity, and only a court of equity could recognize such liens or equitable rights.

■ The answer to this contention is that courts of equity do not create causes of action, they arise out of contract or the relation of the party and the subject matter dealt with as a matter of law, and equity only furnishes a remedy for such causes and rights when the common law procedure "by reason of its universality is deficient" and the remedy at law is inadequate. Smith v. Roney, 182 Ala. 540, 62 So. 753; Janney v. Buell and Wife, 55 Ala. 408; Butler v. Wilson et al., 237 Ala. 312, 186 So. 687, 688.

In the last cited case it is observed: "Nor do we find the case of Janney v. Buell, 55 Ala. 408, in any manner sustains plaintiff's insistence here. That authority merely recognizes the jurisdiction of the equity court in instances where the legal remedies are inadequate for the enforcement or protection of an 'acknowledged right,' to use the language of the opinion, *but repudiates any theory of equity jurisdiction for the establishment of a right that previously did not exist.*" [Italics supplied.]

■ The action on the case is an equitable action and lies for the destruction of

equitable interest in property, as indicated by the authorities herein above cited.

Amicus curiae have filed briefs contending that the doctrine in Paden & Co. v. Bellenger & Ralls in no way impinges the doctrine of Meyer, Trustee et al. v. Johnston and Stewart, Trustees, 53 Ala. 237, and Electric Lighting Company of Mobile v. Rust, 117 Ala. 680, 23 So. 751, and in this we agree. The doctrine of those cases relates to chattels within the contemplation of the parties to be acquired and used as an essential element or unit of an industrial plant, which has a fixed situs, or addition to existing plant or system not for sale as a separate chattel. While the doctrine of Paden & Co. v. Bellenger & Ralls, supra, relates to chattels produced or acquired for traffic and sale.

The ruling of the original opinion is in strict harmony with the well settled rule relating to the latter class of chattels, a rule of property which has been recognized by the Legislature as the law making body of the State. Shaw et al. v. Kinney, 227 Ala. 170, 149 So. 227.

The application is without merit and is due to be overruled.

Opinion extended. Application overruled.

All Justices concur.