(22 App. Div. 489.)

BEZER v. HALL SIGNAL CO.

(Supreme Court, Appellate Division, Second Department.    November 30, 1897.)

1. INVENTIONS—ASSIGNMENT—CONSIDERATION—PATENT.
    Where an inventor grants an exclusive license to use the invention, the fact that it is not patented does not invalidate the license on the ground of lack of consideration.

2. SAME—CONSTRUCTION OF CONTRACT.
    In an action against a licensee under an exclusive license to use certain inventions, not then patented, it appeared that by the second clause of the contract, executed in December, 1892, defendant agreed to pay to plaintiff, under the letters patent, certain royalties on every lever and mechanical lock, and by the third clause, that from and after September 4, 1892, the total payments should not be less than $1,000 a year. *Held* that, until the issuance of letters, defendant was to pay $1,000 a year, and upon such issuance was to pay as provided in the second clause, except that its payment must not fall below $1,000 a year.

3. SAME—ENFORCEMENT OF CONTRACT.
    The fact that one who grants a license for the exclusive use of an invention reserves the right to revoke it in case of default in payment of royalties neither confers any right on the licensee, nor takes away the licensor's common-law right to enforce the contract.

Appeal from special term.

Action by Henry Bezer against the Hall Signal Company. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

George W. Miller, for appellant.
Arthur E. Walradt, for respondent.

HATCH, J. The complaint in this action is attacked as failing to state a cause of action. The ground of the attack is that no

consideration is stated which imposed any liability upon the defend-ant. The averments of the complaint in this particular are these: That on or about the 3d day of December, 1892, the defendant en-tered into a written contract with the plaintiff, whereby, in con-sideration of an exclusive license given by the plaintiff to the de-fendant to use certain inventions of the plaintiff, the defendant promised and agreed to pay to the plaintiff, from and after the 4th day of September, 1892, $1,000 per year, payable in equal, quarterly installments, of $250 each, on the 4th days of March, June, Septem-ber, and December in each year, until the expiration of the full term of the patents which might be issued for such invention. The par-ticular wherein there is failure to aver consideration lies in the claim that there is no allegation that any patent was ever issued covering the inventions for which an exclusive license was given, and that an exclusive license to use inventions was valueless, and could not ripen into a consideration, until a patent was issued there-for, as no property right was vested in the defendant until that time. We conceive that this position misapprehends the law. An inven-tion is the subject of an assignment, and an assignment of it carries with it the right to the patent when the same shall be issued. Gay-lor v. Wilder, 10 How. 477; Littlefield v. Perry, 21 Wall. 205–225; Brush Electric Co. v. California Electric Light Co., 3 C. C. A. 368, 52 Fed. 945–963. It may be that an inventor has no exclusive right in the use of his invention until he has obtained a monopoly by the issuance of a patent. But that he has an inchoate right, which is a property interest, and may institute proceedings to protect the same by caveat and by application for a patent, is well settled. The interest which the invention gives him to obtain a patent is sufficient upon which to found a consideration for a promise to pay for such exclusive use, made before the patent is issued, within the authorities we have cited. The complaint therefore stated a good cause of action, and the ruling of the court thereon was correct.

The answer set out the contracts which were executed by the parties thereto, and claim is made by the defendant that the court should have directed a verdict in its favor, based thereon, and upon the proof. The question was raised upon a motion made by the defendant to dismiss the complaint at the opening of the trial, and also by a motion to dismiss made at the close of the case. The ground of these motions was the same. In language, it was this:

"That there is no allegation or proof that any patent has ever been issued to the plaintiff, or that any patentable invention was in fact made by the plain-tiff, in or under which defendant obtained any right or license."

Whether the invention was patentable or not may be dismissed from consideration with the observation that no such defense is raised by the answer; and, if it were, the jury were warranted, upon the proof in the case, to find that the invention was a patentable invention. Indeed, it appeared that two patents of the inventions, as to some of the claims at least, had been allowed, and only awaited payment of the expense, to issue. As to the third invention, the proof warranted a finding that the application for a patent had been deferred at the instance of the plaintiff, or by mutual consent.

So far as these considerations were within the issues, we must assume that the court properly submitted them to the jury, as no complaint is made in this respect, and the charge is not given in the record. An option contract was first made on the 4th day of September, 1891. This contract is referred to in the one under date of December 3, 1892. Its consideration, however, has no force or effect to modify the later contract, except as, by reference, its date fixes the time when the royalties secured to be paid commence. The last contract, after its formal part, recites the character of the inventions, and states that the defendant is desirous of securing the exclusive right to make, use, and sell said inventions throughout the United States. By the first clause the plaintiff grants and conveys to the defendant and its successors the sole and exclusive right and license to make, put into operation, use, and sell the said inventions, or any of them, and any and all modifications and improvements, under any and all letters patent of the United States that are, or may at any time be, issued for said several inventions or improvements, or for any of them. The effect of this clause in the contract was not only to assign the inchoate right which the plaintiff possessed in his invention, but to convey the title to the letters patent issued thereon, as we have seen, and also to convey the right to apply for and obtain an extension of the patent at its expiration, in like manner as the defendant could if no assignment had been made. Hendrie v. Sayles, 98 U. S. 546.

The second clause of the contract, so far as important, is in these words:

"The party of the second part [defendant] has agreed, and does hereby agree, to pay to the party of the first part [plaintiff] royalties as follows, under all such letters patent of the United States, from the day of issue thereof, namely: Fifteen dollars ($15.00) per lever for each and every lever fitted with said lock and block system; five dollars ($5.00) for each and every one of said electro-mechanical locks."

Then follow certain conditions when the payments shall be different, and it provides that payments shall be made on the 15th day of January, April, July, and October, respectively, for the preceding three calendar months.

The third clause, so far as important, reads:

"It is agreed that from and after the 4th day of September, 1892, the total payments by the party of the second part under this exclusive license are not to be less than one thousand dollars ($1,000.00) a year, payable in quarterly installments of two hundred ($250.00) and fifty dollars each."

Then follows a provision for the reduction in amount of any sum received from the Johnson Railroad-Signaling Company, if it should be held that the latter company possessed any rights under a contract held by it with the plaintiff. Then follows:

"In default of which payments, the party of the first part is to have the right to revoke the license after thirty (30) days' notice, and without payment during said thirty (30) days after notice."

By the fourth clause, the defendant agrees, at its own expense, to prosecute applications for letters patent for all of said inventions, and diligently prosecute the business, and bring said inventions to the attention of railroad officials, for the mutual profit and bene-

fit of the parties. The plaintiff agreed to sign all papers, and speedily prepare all drawings, and do all other acts and things necessary to be done to protect applications for the letters patent. By the fifth clause, the plaintiff agreed to sign all other papers essential to secure the defendant in the rights intended to be conveyed. It also identifies the subject-matter of the contract by reference to a blue print of the inventions, which was attached to the contract.

We think that the purpose of this contract is plain, and that its construction is not difficult. The only controversy that arises relates to the construction of the second and third clauses of the contract. It is quite true, as contended by the defendant, that the second clause contemplates that the royalties payable thereunder shall only be payable after the issuance of letters patent. But this was not, alone, the provision of the contract. By the third clause it provided for the payment of royalties beginning at a stipulated time, to wit, the 4th day of September, 1892, and payable thereafter in quarterly installments. Both clauses may stand, as they relate to entirely different conditions, within the clear contemplation of the parties. When the first contract was made, it took effect from its date (i. e. the 4th of September, 1892); and, by its terms, royalties were then to be paid from its date at the rate of $1,000 a year. That contract, however, only gave an option to the defendant to take the inventions. But for this invention the defendant was to pay at the rate specified, although no patents were then issued, or applications made for the same. By the second contract the option ripened into an absolute agreement, whereby the plaintiff agreed to sell, and the defendant to purchase. The clause with respect to the $1,000 a year as royalties from the time specified in the option contract was incorporated therein. It was therefore the evident purpose of the parties that during the time, from the execution of the contract to the issuance of the letters patent, the defendant was to pay at the rate of $1,000 a year; and upon the issuance of the patents it was to pay as provided in the second clause, and in the manner therein provided, except that the sum to be paid must at no time fall below the $1,000 a year. In a word, the third clause contemplated payment before the patents should issue, the second payments after the patents had issued. So construed, the contract is complete and harmonious, and effect can be given to all its parts. The patents have never issued. But this is not the fault of the plaintiff. Some of them are ready to issue upon payment of the expense. This duty is, by the contract, imposed upon the defendant. It cannot be heard to plead as a defense its own failure to procure the issuance of the patents. Nor is there force in the suggestion that the burden imposed upon the defendant will never end. It ends with the life of the patents for which application has been made. It may be that the defendant has imposed upon itself a hard bargain. But, if the inventions are patentable, the defendant can procure their issuance, and thus set the time running during which it must pay royalties. If the patents are valuable, then it gets the benefit. If they are of little value, it nevertheless gets what it contracted for, and, in the absence of fraud or misrepresentation,

must fulfill its contract. As to the invention for which no application for a patent has been made, neither party can secure any rights, as it appears that by mutual· consent it has, for all practical purposes, been abandoned, unless the defendant should hereafter choose to make the application and procure the patent.

So far as proof was given tending to show that the invention was a mere improvement upon the Sikes system is concerned, it cannot avail, for two reasons: (1) It does not amount to an allegation that the invention is not patentable; and (2) if the representations, under the proof, could have been found fraudulent, the verdict of the jury has settled the question adversely to the contention of the defendant. The same may also be said of the proof respecting the interest of the Johnson Railroad-Signaling Company. The contract itself makes provision for that, and it is quite evident that the parties contracted with respect to the outstanding contract with that company. Besides, it is not shown that any valid claim has or can arise thereunder. If proof was in the case from which it might be so found, the finding of the jury would settle the claim adversely to the defendant.

The fact that the plaintiff reserved the right to revoke the license in case of default conferred no rights upon the defendant, nor did it take away plaintiff's common-law right to enforce the contract. Woodworth v. Weed, 1 Blatchf. 165, Fed. Cas. No. 18,022; Linington v. Strong, 90 Ill. 556; Preston v. Smith, 156 Ill. 359, 40 N. E. 949.

We find no ground upon which the judgment can be disturbed. It should therefore be affirmed, with costs. All concur.