Dora A. Moore, Appellee, v. Southern Independent Oil and Refining Company, Appellant.

Term No. 44,016.

Heard in this court at the February term, 1945. Opinion filed March 5, 1945. Rehearing denied June 21, 1945. Released for publication June 27, 1945.

HATFIELD, MEYER, FINE & HATFIELD, of Evansville, Indiana and MARION M. HART, of Benton, for appellant.

FRANK E. TROBAUGH and STEPHEN E. BRONDOS, both of West Frankfort, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is an action for rent brought by Dora A. Moore, appellee, hereinafter designated as plaintiff, against Southern Independent Oil and Refining Company, appellant, hereinafter designated as defendant. Summons in distress warrant proceedings recited that plaintiff, the landlord, had lately distrained the goods and chattels of defendant, describing the personal property contained in a building used by defendant in operating its filling station. The amended answer of defendant alleged among other things, that defendant was prevented and forbidden from operating its service or distributing station in the manner provided for in the lease, because of Petroleum Directive No. 57. In addition thereto, it alleged an abandonment of said premises by defendant. The reply of plaintiff denied that under the Federal regulation known as Petroleum No. 57, defendant was prevented and forbidden from operating its station under the terms of the said lease.

Upon the trial of said cause by the court, without a jury, judgment was entered in favor of plaintiff and against defendant in the sum of $325, being the sum claimed by plaintiff for rent due, for a period of five months from February 1, 1943, to July 1, 1943, at $65, a month, payable in advance. From this judgment defendant appeals to this court.

It appears that plaintiff, as lessor and defendant as lessee, on September 11, 1941, entered into a lease of certain premises situated in the City of West Frankfort, Illinois. Said lease was for a period of five years, and provided a monthly rental of $65, payable in ad-

vance. Among other provisions the lease set forth that it was the lessee's purpose to use said property as a service or distributing station, filling its tanks directly from tank cars to be placed on the adjacent railroad track and that "if during the period of this lease, or any extention thereof, lessee's plan of operation, namely, of unloading the whole contents of a tank car into said station, should be prevented or forbidden by any law, ordinance or other regulation . . . lessee shall have the right to terminate this lease." The lease further provided for a 60-day notice to lessor, in such event. There was further proviso, that in the event the lease was terminated for any cause therein provided or by mutual agreement or otherwise, lessee agreed to continue to pay rent at the rate of $65 per month until it removed its improvements, tanks, equipment and other property located thereon.

On the 24th day of August 1942, there was promulgated a Federal regulation commonly known and designated as Petroleum Directive No. 57. Section 1510.17 thereof being as follows: "1510.17. Area of Restriction Upon Movement of Certain Petroleum Products by Rail. No person, natural or artificial, engaged in the business of refining, transporting, purchasing or distributing petroleum or petroleum products in the United States on or after August 24, 1942, shall move, cause to be moved, purchase or sell for movement by railroad tank car, any automotive gasoline for commercial distribution, from any point within the United States to any other point within the States of Illinois . . . (here are enumerated a number of other states)."

Said directive further provided that under the order, distributors should arrange for common use of terminals and that no distributor in the area affected should be deprived of an opportunity to share equitably in the available supply and use of facilities throughout the

area affected. Under exceptions, the directive further provided that the governmental agency would provide such common use of transportation, as would be necessary to attain maximum efficient utilization of all available transportation, supply and distribution facilities as would insure the maintenance of an adequate supply of petroleum products throughout the area; further, that in the event any person affected by the directive, showing the authorities such directive would result in the nondelivery of products for agricultural purposes, continued efficient operation of any essential industrial establishment, or for the maintenance of public health or safety, might apply to the director for special authorization to get gasoline.

Leases, in common with other contracts, are construed from the four corners of the instrument in order to arrive at the true intention of the parties. It is not allowable to interpret what has no need of interpretation and when the words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning. *Weill v. Centralia Service & Oil Co.*, 320 Ill. App. 397. Although it is set out in the lease, that defendant is to use the property as a distributing station, filling its tanks through pipelines directly from tank cars placed on the adjacent railroad tracks, nowhere is it stated that the lessee has a right to terminate the lease because or on account of the fact that it is unable to obtain delivery of gasoline in tank car lots. The language used, is, "If during the period of this lease . . . lessee's plan of operation, namely, of unloading the whole contents of a tank car into said station should be prevented or forbidden by any law, ordinance or other regulation . . ." which is followed by other expressed conditions particularly applicable to the property at its situs. The familiar doctrine of the law of expressio unius est exclusio alterius, is particularly applicable here. The expression in

a contract of one or more things of a class, implies the exclusion of all not expressed. *Hammerquist v. Swensson,* 44 Ill. App. 627; *Stettauer v. Hamlin,* 97 Ill. 312; *Century Parlor Furniture Co. v. Harty Bros. & Harty Co.,* 141 Ill. App. 17.

We are therefore of the opinion that even though Directive 57 entirely prohibited the transporting of gasoline in tank-car lots, that such exclusion cannot be read into the lease or reasonably inferred as being the intention of the parties. The evidence shows that the last gasoline delivered to defendant by rail was in April 1942, and that both before that and after, some deliveries were made to it by truck; that after that date all of its gasoline was delivered to it by transport trucks. The evidence shows no effort on the part of defendant to take advantage of the exceptions offered under Directive 57, in securing gasoline.

Under this record we cannot hold that the court erred, as claimed by defendant, in holding that Directive 57 did not give defendant the right to terminate the lease given defendant by plaintiff.

Paragraph 6 of the lease involved herein, provided that in the event the lease was terminated for any cause therein provided, or by mutual agreement or otherwise, the lessor agreed to continue to pay rent at the rate of $65 a month until it removed its improvements, tanks, equipment and other property located thereon. There is evidence in the record that after notice was served by defendant on plaintiff, a tank and other equipment, the property of defendant, remained on the premises. On behalf of defendant, John Sanders, who up to the time he withdrew as such attorney, represented defendant, testified that he had informed the husband of plaintiff, that defendant had abandoned that equipment. There is some evidence in the record, however, of attempts on the part of defendant, after the attempted termination of the lease, to sell said tank and equipment, which is in-

consistent with the theory of abandonment of said property on the part of defendant.

■ ■ Whether there was an abandonment, was unquestionably a question of fact for the court. The case was tried before the court, without a jury, and as a court of review, we will not substitute our findings of fact for the findings of the trial court, unless the judgment is clearly against the manifest weight of the evidence. As a reviewing court, we will accept the findings of the trial judge upon questions of fact, based upon the statements of witnesses whom he saw and heard testify, unless such findings are clearly and palpably erroneous. *Floyd v. Estate of Smith,* 320 Ill. App. 171; *Frazier v. Allison,* 315 Ill. App. 253.

We find no reversible error in this record and the judgment of the trial court is affirmed.

*Affirmed.*