Mid-Continent Films, Inc., an Illinois Corporation, Plaintiff-Appellee, v. Essanjay Films, Inc., an Illinois Corporation, Defendant-Appellant.

Gen. No. 48,580.

First District, Second Division.

February 23, 1962.

Goldberg & Levin, and Aleck L. Bernstein, all of Chicago (Mayer Goldberg, and Sheldon L. Lebold, of counsel), for appellant.

Kalcheim & Kalcheim, of Chicago (Jay Erens, of Chicago, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court:

Plaintiff sued to recover a payment allegedly due on a written license agreement. Defendant's answer

admitted the agreement and pleaded the defense hereinafter discussed. Plaintiff moved for a summary judgment on the basis that the pleadings show that there is no genuine issue as to any material fact. Defendant filed an affidavit in opposition to this motion. The motion is tantamount to a request for judgment on the pleadings. The court granted plaintiff's motion for $50,000. Defendant appeals.

Plaintiff is engaged in the business of producing feature length motion pictures. It produced a film entitled "The Prime Time." Defendant is engaged in the business of distributing feature length motion pictures to exhibitors and theaters throughout the world for showing to the general public. On December 17, 1959, the parties entered into a written agreement. Plaintiff alleges that defendant breached the agreement by refusing to pay a "guaranteed net film rental" in the amount of $50,000 which became due, according to plaintiff's interpretation of the contract, on December 17, 1960. Defendant admits the execution of the agreement and that it failed and refused to pay $50,000 to plaintiff, but denies that the agreement provides for making such payment to plaintiff.

Defendant alleges that under proper interpretation, if the net film rental which plaintiff received was less than $50,000 for the period of 12 months following execution of the contract, plaintiff should have the right to terminate the contract by notice to defendant; alleges that the parties did not intend to provide for payment of $50,000 to plaintiff in any event or for payment to plaintiff in any sum over and above the actual earnings of the film as defined by the contract; and further alleges that it appeared from the acts and conversations of the parties, as well as from the interpretation placed upon the contract by the parties, that they never intended to make defendant liable for payment to plaintiff in any specified sum.

155

In the affidavit by defendant's president in opposition to the motion he stated that he had conducted the negotiations with an agent of plaintiff, Herschel G. Lewis, its president; that prior to the signing of the contract these parties met to discuss terms and conditions; that at this time affiant told plaintiff's agent that the net film rental which plaintiff should receive from exhibition of the film would, in his judgment, be not less than $50,000 for the year of the contract; that the plaintiff's agent asked if defendant would undertake to pay this on its own liability; that affiant replied that it would not, but that he was willing to have the contract provide that if the net film rental did not aggregate $50,000, plaintiff could then have full privilege of canceling the contract; that plaintiff's agent stated that this was agreeable and that the contract was then prepared entirely by the attorney for plaintiff, who is a brother of the president of plaintiff.

██ There can be no disagreement with defendant's statement that the entry of a summary judgment is proper only when there are no material issues of fact presented by the pleadings. Barkhausen v. Naugher, 395 Ill 562, 567, 70 NE2d 565; Diversey Liquidating Corp. v. Neunkirchen, 370 Ill 523, 527, 19 NE2d 363; Naus v. Joanna-Western Mills Co., 18 Ill App2d 85, 92, 151 NE2d 432. In Allen v. Meyer, 14 Ill2d 284, 152 NE2d 576, our Supreme Court said (292): "Summary judgment procedure is an important tool in the administration of justice. Its use in a proper case wherein is presented no genuine issue as to any material fact is to be encouraged." The first seven paragraphs of the agreement refer generally to the parties and the subject matter. Plaintiff granted defendant an exclusive license for exhibition of the picture throughout the world. Plaintiff had no right of control over defendant's activities regarding

156

the film and no agency was created. Defendant agreed to pay plaintiff 60% of all "net film rental" derived from exhibition of the film. In determining net film rental defendant was to start with receipts and deduct therefrom specified necessary costs. Defendant was to keep accurate records and pay plaintiff the net film rental not later than the 20th day of the calendar month immediately following the month of collection. The payments were to be accompanied by itemized records as to receipts and disbursements, including vouchers. The contract provided in detail as to the nature of the vouchers or receipts to be submitted. Defendant agreed to permit plaintiff to inspect its records. The contract contains covenants as to the duty of defendant to make prints available. The agreement was to give plaintiff due credit in the title upon showing of the film, defined the legal relationship between the parties, and agreed that it would not be a joint venture or partnership.

The following paragraphs set forth the personal liability of the parties each to the other. No. 8 states that plaintiff as licensor warranted its full ownership of the film and agreed that it would not grant any other person the right to exhibit the film; No. 9 that plaintiff agreed to indemnify defendant against loss or damages resulting from breach of warranty; No. 10 that defendant agreed to indemnify plaintiff against any claims or loss resulting from the activities of defendant's employees under the contract; No. 11 that defendant took sole responsibility for making any deletions in the film. The next seven paragraphs of the contract pertain to termination thereof. No. 12. The contract was to terminate 30 months after date of execution. It was dated as of December 17, 1959. No. 13. In the event of breach of contract, notice could be served by either party upon the other by certified mail. Then followed a 15 day period within which the

violation could be cured. If not so cured, the agreement could be terminated by written notice sent by certified mail. No. 14. Within 30 days after termination defendant was to furnish a complete accounting, including the same information required for monthly reports, until all uncollected film rentals had been remitted. No. 15. All negatives and prints were to remain the sole property of plaintiff. No. 16. Defendant could not assign any interest acquired by the contract without plaintiff's consent. No. 17. Upon termination of the agreement, defendant was to return all of the prints to plaintiff and to remit all sums due plaintiff within 10 days after such termination.

The controversy concerns Paragraph 18, the first sentence of which reads: "Licensee guarantees that the Net Film Rental to be paid to Licensor by Licensee within a period of twelve (12) months following the (execution of this contract) shall be not less than Fifty Thousand Dollars ($50,000)." Similar language is used with reference to the net film rental for the six month period after the initial year, which was to be not less than $30,000. For every succeeding six month period the net film rental was to be not less than $10,000. Immediately thereafter and in the same paragraph there is a provision that if plaintiff shall not have received at the end of any period "the sum guaranteed to be paid within such period" plaintiff would have the right to terminate the contract by notice in writing to defendant, "which said notice shall be sent within 30 days of the expiration of the period in which the guarantee shall not be paid." The same paragraph also provides that upon termination by lapse of time at the end of the initial 30 months period, the agreement would automatically be renewed for periods of one year, unless more than 90 days prior to the expiration either party notified the other "in the manner provided in this paragraph as in case of failure to meet

158

guarantee" of its intention to cancel, in which case the agreement should be deemed canceled. Paragraph 19 provides that the agreement shall not be altered or modified unless by mutual written agreement. The remaining 7 paragraphs, Nos. 20 to 26 inclusive, provide for special situations of no importance here.

Defendant insists that an analysis of the agreement, with particular reference to Paragraph 18, shows that it is patently ambiguous; that this paragraph is completely ambiguous on its face in its use of the word "guarantee"; that the word "guarantee" has several different meanings; that proper construction of the agreement depends upon determination of factual issues; and that a decision of the issues presents questions of fact which must be resolved by the court and a jury upon a trial with presentation of all pertinent evidence to arrive at the intention of the parties. Defendant argues that the only result flowing from a deficit in the net film rental is the creation of a right in plaintiff as licensor to terminate the contract upon written notice, citing Indemnity Ins. Co. v. Prairie State Bank, 336 Ill App 438, 84 NE2d 338. Concluding that the agreement is ambiguous, defendant says that the true intention of the parties must be determined by the various provisions of the entire contract considered as a whole, and that the entire contract supports its position that there was no personal undertaking by defendant, citing Moon v. Roberts, 186 Ill App 15, and other cases.

Defendant states that Paragraph 18 of the contract cannot be interpreted as a personal undertaking, and that since this paragraph expresses only the right to terminate if the net film rental does not aggregate a specified amount, it follows that the right of termination is the exclusive remedy available to plaintiff. Defendant cites Moore v. Southern Independent Oil & Refining Co., 326 Ill App 112, 61 NE2d 684,

for a statement of the familiar doctrine that the expression in a contract of one or more things of a class implies the exclusion of all not expressed. Defendant says that the intention of the parties was to vest in plaintiff the right of termination of the contract as the sole and exclusive remedy which it could pursue in the event the activities of defendant failed to produce the desired amount of profit. The meaning of the word "guarantee" may vary with the content of the text in which it is used. We are concerned here only with the meaning of the word in the written agreement.

The cases cited by defendant discuss the use of the words "guarantee" "guaranteed" and "guaranty" in the text of the document there being considered. These cases are not applicable to the agreement before us. We are convinced that the agreement in the instant case requires defendant to pay a minimum of $50,000 within 12 months after its execution irrespective of the amount of the net film rental actually received. Plaintiff's right to cancel the contract if this sum is not paid does not affect defendant's obligation to pay it. The use of the word "guarantee" instead of "promise" or "agree" was apt to express the thought that while plaintiff would receive more than $50,000 as its share of the net film rental fund if the film prospered as contemplated, yet if the net film rental was insufficient to generate that amount, defendant guaranteed that the $50,000 would be paid. The granting to plaintiff of an additional remedy of cancellation in case of breach does not deprive it of the guarantee of the minimum of $50,000. The covenant to pay the $50,000 is clearly stated in the first sentence of Paragraph 18. The provision for cancellation contains two references to the guarantee to pay the $50,000. The right of cancellation arises only when defendant fails to pay "the sum guaranteed to be paid" and the notice of cancellation is to be sent with-

160

in 30 days after "the period in which the guarantee shall not be paid." In the agreement the parties provide for two separate and cumulative remedies. We are of the opinion that Moon v. Roberts, 186 Ill App 15, and Standard Appliance Co. v. Standard Equipment Co., 296 F 456, are not applicable to the factual situation in the case at bar.

The courts hold that language similar to that of the license agreement in the instant case imports an obligation to pay a minimum royalty irrespective of actual receipts and despite a right to cancel if the minimum royalty is not paid. See Preston v. Smith, 156 Ill 359, 40 NE 949, affg 57 Ill App 132; Linington v. Strong, 90 Ill 556, 107 Ill 295 and 111 Ill 152; American Delinting Co. v. Pomeraning, 274 F 212; Beecher v. Stein, 137 Pa 570, 21 Atl 79; Bezer v. Hall Signal Co., 22 App Div 489, 48 NY Supp 203.

Finally defendant urges that the ambiguity of Paragraph 18 of the contract requires the use of parol evidence and that the case is one for the taking of parol evidence and for trial by jury to ascertain the intention of the parties. As we have decided that the intent of the parties clearly appears in writing and requires the defendant to pay a minimum of $50,000 within 12 months after its execution, irrespective of the amount of the net film rental received and plaintiff's right to cancel, it is unnecessary to consider the effect of the affidavit made by defendant's president. We think that the case was correctly decided and the judgment is affirmed.

Judgment affirmed.

FRIEND, P. J. and BRYANT, J., concur.