Louis P. Kimmig, Appellant, *v.* Henry P. Talmadge, Respondent.

First Department, March 6, 1931.

*Herbert M. Simon* of counsel [*Black, Varian & Simon,* attorneys], for the appellant.

*Ferdinand I. Haber* of counsel, for the respondent.

Finch, J. The action is brought upon six promissory notes aggregating $2,990.92, made by the Multivalve Corporation and indorsed by defendant, which notes were given to plaintiff by the defendant pursuant to a written agreement between them by which plaintiff licensed the defendant to manufacture and sell a radio tube device known as the Multivalve, which had been invented by plaintiff's son.

Upon the trial the defendant relied upon the sole claim that the defendant entered into the contract in the belief that the license was of great value, whereas it in fact had no value, and, therefore, that the defendant was entitled to a rescission of the agreement and to recover back the amounts paid thereunder. These contentions

the trial court sustained. This holding, however, is not supported by the facts. These are as follows: In November, 1926, a son of the plaintiff entered into a written agreement with the Emerson Radval Corporation granting to the latter an exclusive license to manufacture and sell a device concerning which an application for letters patent was then pending on behalf of plaintiff's son, the inventor. The licensee upon its part agreed immediately to commence the manufacture and sale of the device, and to pay to plaintiff's son certain royalties. Pursuant to this agreement the licensee undertook the prosecution of the pending patent application and also applied for patents in England, France and Canada, which subsequently were granted. The Emerson Radval Corporation defaulted in payments due under the license agreement, whereupon new agreements were entered into extending the time of payment of the arrears, and by which certain machinery and equipment were sold and delivered by plaintiff's son to the Emerson Radval Corporation, for all of which the corporation delivered its promissory notes. Of this corporation Frank Talmadge, a son of the defendant, was the president and majority stockholder. The plaintiff's son had assigned to the plaintiff the aforesaid notes of the licensee corporation, and his right to receive the patents when issued. The Emerson Radval Corporation continued to default under the contract and plaintiff, therefore, threatened to terminate the license unless the notes were paid. Desiring to avoid this, defendant's son guaranteed payment of the indebtedness of the licensee in return for the grant by plaintiff to the corporation of additional time in which to make payment. This agreement also was not fulfilled and plaintiff obtained judgments against the corporation and defendant's son, both of which proved uncollectible.

Defendant's son thereafter sought a new license from plaintiff, but the latter refused to deal with him, offering, however, to contract with the defendant. Following this, the plaintiff canceled the license to the Emerson Radval Corporation and made a new contract directly with the defendant, which recited the filing of the original and continuation applications for the American patents, granted to the defendant the exclusive right to manufacture and sell the multivalve tube throughout the United States during the period for which letters patent may be granted and/or extended, conveyed to the defendant a three-fourths interest in the foreign rights, and granted to the defendant the right to repossess and use the machinery sold to the Emerson Radval Corporation.

Upon his part the defendant undertook the payment of the arrears due and to make future payments of certain minimum royalties payable monthly. In performance of the obligation to pay the

arrears the notes sued upon by plaintiff were given. For three months following the contract the payments due thereunder were made by defendant. Meanwhile, an examiner in the Patent Office again rejected certain of the claims, whereupon the application was again amended, and an affidavit filed, concerning which defendant received a letter from one of the attorneys in charge of the patent application, stating " my general conclusion is that if the affidavit is not accepted, Kimmig has little chance of securing any valuable patent protection." Defendant thereupon wrote plaintiff: " I do not feel, under the circumstances, that I should continue paying you royalties until I can determine the validity of your application and the possibility of securing a patent thereunder. * * * I do not wish you to understand that it is my intention to break off our relationship with you. A modification of our present contract seems advisable under the circumstances."

The defendant refused to pay two notes subsequently maturing and the plaintiff pursuant to the agreement declared due the principal amount of certain of the notes and brought this action thereupon.

As before noted, the only claim relied upon by defendant at the trial was that the patent application had turned out to be without value, because a patent had not been granted.

At the time of the trial, however, the application was still pending. The last amendment had not been passed upon, and there was no proof that it would not finally be granted. There is thus a lack of any proof upon which to base a rescission for failure of consideration. Upon the contrary, there is ample proof of consideration not alone sufficient to defeat the counterclaim for rescission, but to sustain the plaintiff's cause of action. The defendant received all that he was entitled to under the agreement. He enjoyed without molestation the right to manufacture under the license, also to use in connection therewith the machinery of the plaintiff. He was given a three-fourths interest in the foreign patents which were actually granted upon the invention. There was no representation as to when the patent would be issued, and no warranty that a patent would in fact ultimately be issued. The defendant went into the proposition with full knowledge of all the facts. Clearly he is liable for all payments that have actually become due under the contract.

At the trial it was held that the only right the plaintiff attempted to grant was one based upon the final issuance of a patent. The acts of the parties, however, negative such a construction and show that the rights granted were such as plaintiff had pending the issuance of a patent.

Such license in itself, aside from the other items of consideration above enumerated, is a good consideration. As was said in *Bezer* v. *Hall Signal Co.* (22 App. Div. 489): " It may be that an inventor has no exclusive right in the use of his invention until he has obtained a monopoly by the issuance of a patent. But that he has an inchoate right which is a property interest, and may institute proceedings to protect the same by caveat and by application for a patent, is well settled. The interest which the invention gives him to obtain a patent is sufficient upon which to found a consideration for a promise to pay for such exclusive use, made before the patent is issued, within the authorities we have cited."

This conclusion likewise disposes of the counterclaim.

We are not here dealing with the rights of the parties with respect to future royalties in the event the patent should finally be denied.

It follows that the judgment appealed from should be reversed, with costs, and judgment awarded to plaintiff for the sums demanded in the complaint, with costs.

McAvoy, Martin and O'Malley, JJ., concur.

Judgment reversed, with costs, and judgment awarded to plaintiff for the sums demanded in the complaint, with costs. Settle order on notice, reversing findings inconsistent with this determination and containing such new findings of facts proved upon the trial as are necessary to sustain the judgment hereby awarded.