SUNDAY v. NOVI EQUIPMENT CO.

1. PATENTS—ROYALTIES—LICENSE CONTRACT—EXHAUST HEATERS—
IDENTITY OF PRODUCT—EVIDENCE—ESTOPPEL.

In an action of assumpsit to recover royalties under a license contract with defendant for manufacture and sale of exhaust type heaters for automobiles, defense that evidence failed to show that heater manufactured was the same as the one described in the application for a patent and contract involved *held*, untenable under evidence presented, and defendant's rights were not prejudiced by trial court's holding defendant was estopped from denying that the heaters manufactured and sold by it were of the type described in the aforesaid instrument.

2. SAME—CONTRACTS—ROYALTIES.

A contract to pay a royalty for leave to manufacture an unpatented invention is valid and enforceable.

3. SAME—LICENSES—ROYALTIES.

A licensee of the right to use an invention or device under a patent cannot escape liability for royalties contracted to be paid though it turns out the device was not in fact patentable and not covered by the patent.

4. SAME—ROYALTY CONTRACTS—DENIAL OF APPLICATION—FAILURE OF CONSIDERATION.

Where application for patent was made simultaneously with contract licensing defendant to manufacture exhaust type heater for automobiles, all parties knew of uncertainty of issuance of patent, and application was kept alive in accordance with procedure of the patent office and only partially denied finally some months after instant action was brought for royalties, defense of failure of consideration is not available to licensee, it being immaterial to present controversy whether or not such claim as was granted was within the terms of the license contract which was intended to remain in force during pendency of application.

5. SAME—CONTRACTS—FAILURE OF CONSIDERATION—TERMINATION— ESTOPPEL.

Licensee's acceptance of personal services of plaintiff and payment of royalties under license agreement for manufacture of exhaust type heater for automobiles, for which an application for patent had been made, after first denial of application, *held*, a course of conduct barring later claim of failure of consideration or termination of the contract if not estopping it from disavowing liability under the contract intended to remain in force during pendency of application.

6. SAME—FRAUD—BURDEN OF PROOF—TRIAL COURT'S FINDINGS— EVIDENCE.

In action for royalties under licensing agreement, finding of trial court, sitting without a jury, that defendant had not sustained its burden of proof under claim of fraud as to efficiency of exhaust type heater for automobiles *held*, justified under conflicting testimony presented.

7. SAME—MODIFICATION OF ROYALTY CONTRACT—BURDEN OF PROOF— EVIDENCE.

Finding of trial court, sitting without a jury in an action for royalties under a written license agreement, that defendant had failed to sustain its burden of proof under claim that royalty percentage had been modified after contract was entered into is not disturbed where testimony is conflicting, credibility of witnesses was an important issue presented to trial judge, such defense was not interposed until 10 months

after action was commenced, no consideration for the oral modification is shown, and plaintiff asserts that in deferring payment of a portion of the royalties he was induced to do so because of false representations of defendant's representatives.

8. SAME—VALIDITY—INVENTOR—NAME ON APPLICATION.

If an application is made for a patent in the name of a person other than the actual inventor, a patent issued thereon is rendered invalid.

9. APPEAL AND ERROR—QUESTIONS REVIEWABLE—PATENTS.

Question as to validity of patent *held,* immaterial to decision in action to recover royalties under license agreement entered into simultaneously with application for patent where agreement was terminated while application was pending.

10. PATENTS—ROYALTIES—DENIAL OF APPLICATION.

Defendant *held,* not entitled to recover sums alleged to have been paid in excess of royalties accrued prior to a date up to which they were admittedly payable where plaintiff is found entitled to recover for subsequently accruing royalties as application for patent then denied was kept alive and finally granted in part after action was commenced.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted June 20, 1939. (Docket No. 74, Calendar No. 40,598.) Decided October 20, 1939. Rehearing denied December 20, 1939.

Assumpsit by James J. Sunday against Novi Equipment Company, a Michigan corporation, for royalties due. Judgment for plaintiff. Defendant appeals. Affirmed.

*Lucking, Van Auken & Sprague (Chester P. O'Hara* and *Fred J. Schumann,* of counsel), for plaintiff.

*Wm. Henry Gallagher (S. Reymont Paul,* of counsel), for defendant.

NORTH, J. Plaintiff's action, commenced April 7, 1937, was tried without a jury. He seeks recovery

for royalties claimed to have accrued prior to March 1, 1937, under a license contract with defendant company for the manufacture, use, and sale of exhaust heaters for automobiles. Defendant asserts numerous special defenses, including the following: That plaintiff was unsuccessful in his attempt to secure a patent upon the heater covered by the license contract and this resulted in failure of consideration; that the heater defendant manufactured and sold was not covered by the patent which was obtained under a modified application presented to the patent office subsequent to the consummation of the license contract upon which plaintiff relies and subsequent to starting this suit; that defendant was induced by fraud on the part of plaintiff to enter into the license contract; and that in event recovery is had by plaintiff the royalties, because of a modification of the original license contract, should be computed on the basis of 1½ per cent. of the sales instead of 3 per cent., as held by the circuit judge. Plaintiff had judgment for royalties and accrued interest totalling $8,797.21. Defendant has appealed.

Prior to June, 1936, plaintiff had been extensively engaged in inventing, perfecting, and manufacturing exhaust type heaters for automobiles, and he engaged the services of Arthur McNeish to assist in construction along this line. About this time plaintiff began negotiations with Mr. Lewis Welch, president of the defendant corporation, relative to that company undertaking the manufacture and sale of an automobile heater of the exhaust type which Sunday was then engaged in perfecting, but which he claimed was McNeish's invention. Evidently the parties contemplated that the defendant corporation, which was already extensively engaged in furnishing automobile parts to the Ford Motor Company, would be able to obtain a contract for furnishing

heaters to it. Both Mr. Sunday and Mr. Welch actively engaged in efforts to complete or perfect the heater on which the former had been working. They were concerned with the matter of efficiency, elimination of noise, and acceptable methods of manufacture. During the time these activities were being carried on the parties to this suit entered into the contract which has given rise to this litigation. This contract is dated August 13, 1936, but it recites that on "August 15, 1936," McNeish "did sign the necessary application" for a patent, et cetera. Apparently this contract and the McNeish application for a patent were part of the same transaction and for the purposes of this case should be considered as simultaneously executed; and at the same time McNeish gave defendant a license to manufacture and sell. We will quote briefly from two of these instruments. In part the contract provides:

"Whereas, Arthur W. McNeish has invented an automobile heater of the exhaust type and on August 15, 1936, did sign the necessary application papers preparatory to filing an application for United States letters patent thereon, and the said McNeish has authorized the said James J. Sunday to act as his agent in obtaining a license to manufacture and sell this heater;

"Whereas, the Novi Equipment Company desires to manufacture and sell automobile heaters, and particularly those developed and engineered by James J. Sunday, regardless of whether these heaters are invented and designed by James J. Sunday or by others;

"Now, therefore, in consideration of the mutual covenants set forth below, it is hereby mutually agreed;

"1. James J. Sunday hereby promises to obtain the Novi Equipment Company an exclusive license to manufacture, use and sell heaters of the type

shown, described and claimed in the above-mentioned McNeish application for letters patent and Novi Equipment Company will pay said James J. Sunday a royalty of 3 per cent. of all moneys received from the sale of such heaters and heater accessories used therewith.''

As disclosing somewhat the character of the exhaust heater with which these parties were concerned and something of the nature of the 14 specifications or claims made in the first petition by Arthur McNeish for a patent, we quote one of these claims:

''In an automobile heater of the exhaust type having an inside casing and an outside casing surrounding the inside casing in spaced relation therewith to provide a chamber for the passage of the air which is to be heated, the inner and outer casings each having spaced inlet and outlet openings, a plurality of heat conducting plates positioned within the inner casing and in spaced relation to provide a plurality of pockets within the inner casing, each of said plates having one or more openings therethrough, each of the said openings having a circumferential flange extending towards the next adjacent plate, whereby as the exhaust gases pass through the said inner casing they expand into the said pockets to muffle the exhaust gases and heat is exchanged from the exhaust gases to said fins and conducted by the said fins to the casing and thence to the air passing through the air chamber.''

Following the execution of the license contract and the McNeish petition for a patent, manufacture of the heater was undertaken by defendant, but trouble in construction, particularly in satisfactorily brazing the parts of the heater together, was encountered. This necessitated changes. Further, as soon as cold weather came it was discovered that the heaters installed in Ford cars were unsatisfactory because of inefficiency. This necessitated fur-

ther changes in the heater and also in materials used in manufacture, as well as in tools and equipment.

Throughout the period above referred to, Mr. Sunday had been working for the defendant company, as he testified, in "development work, testing,—just everything, working in with everything with Mr. Welch," until about April 1, 1937, when he left defendant's employ. Some weeks before he left, plaintiff was informed by Mr. Welch that defendant company was in financial trouble, and plaintiff testified that the company then owed him "a little better than $8,000. That was on the basis of 3 per cent, royalties."

The license contract provided that the defendant should pay plaintiff the royalties accruing each month on or before the 10th day of the succeeding month; and in event of defendant's failure to pay the royalties when due the contract gave Mr. Sunday the right to cancel it upon giving the defendant 30 days' notice in writing, it being provided, however, if the defendant rectified its breach within the 30-day period, the cancellation would not become effective. Claiming that the defendant was in arrears in the payments of royalties and acting under this provision in the contract, plaintiff gave defendant notice of the cancellation of the license contract on April 19, 1937. As noted above, plaintiff began this suit April 7, 1937; and from the judgment obtained by him defendant has appealed.

IDENTITY OF MANUFACTURED PRODUCT. One of the defenses urged by appellant is that there is a "total absence of evidence" that the heater manufactured and sold by defendant was of the type described in the application for a patent and in the license contract. Under the record before us this contention cannot be sustained. The heater itself was before the trial court as an exhibit, as also were the specifi-

cations in the application for the patent and the license contract. There was testimony from witnesses which amply established that the heaters manufactured and sold by defendant were of the same type as that described in the application for the patent and referred to in the license contract. Further, the whole course of conduct of these parties as disclosed by the testimony tends to sustain the same conclusion. Defendant's rights were not prejudiced by the trial court's ultimate holding defendant was estopped from denying that the heaters manufactured and sold by it were of the type described in the patent application and license contract.

FAILURE OF CONSIDERATION. Another defense urged by appellant is that since the application for a patent was denied as to all claims embodied in the application which was made at the time the license contract was executed, the licensee cannot be held liable in this suit. This contention is based on the theory that denial of the patent constituted failure of consideration for the contract, at least as to royalties which accrued subsequent to such denial. In giving consideration to this contention we must apply it to the specific facts in this case. It is important to bear in mind that this license contract was not entered into under a claim of the licensor that a valid patent had theretofore been issued. In such a case it might well be urged that subsequent cancellation of the patent would constitute failure of consideration. *Ross* v. *Fuller & Warren Co.,* 105 Fed. 510. In the instant case all parties concerned knew at the time the license contract was executed that McNeish had not yet obtained a patent but instead his application for a patent was being made simultaneously. It is a fair inference from the record that all parties concerned knew it was uncertain whether a patent could or would be obtained under

any of the claims or specifications at first embodied in the McNeish application, made August 15, 1936. Subsequently it developed that this application was denied November 23, 1936; but it is worthy of note that this first denial was expressed in the following words: "No claims are allowed at present." Further, it is important to bear in mind that this denial was not wholly upon the ground that prior patents had issued which covered all the claims made in McNeish's petition. It is in this particular that the instant case is to be distinguished from *Hamilton* v. *Park & McKay Co.*, 125 Mich. 72. In the cited case the court's decision was *solely* on the ground that before the execution of the royalty contract the patent office had denied the petition for a patent because there were prior patents which covered *all* claims made by the petitioner; and this established nonexistence of the subject matter of the contract.

Under the regulations of the patent office the petitioner for a patent has six months after the denial of claims or specifications presented in his petition to alter, modify, or make more specific his claims; and thereupon the modified petition is given further consideration by the patent office. Within the time limit McNeish conformed to the prescribed practice by cancelling certain of his claims and amending others. These amended claims pertained to an exhaust heater for automobiles of the same type as the heater for which claims of patentability were originally made by McNeish in his petition of August 15, 1936; and these amended claims, made May 22, 1937, were pending as a part of the McNeish petition before the patent office until the date of the denial of the amended claims, September 17, 1937. Before stating further facts pertaining to the subsequent development of McNeish's application for a patent, we make the following observations.

Beyond any question, in entering into the license contract these parties contemplated that each of them should have the rights specified in the contract and the benefits accruing thereunder during the time McNeish's petition for a patent was pending, unless the contract was terminated in the meantime in accordance with its provisions by one or the other of the parties.

"A contract to pay a royalty for leave to manufacture an unpatented invention is valid and enforceable. (Citing cases.) A licensee of the right to use an invention or device under a patent cannot escape liability for royalties contracted to be paid though it turns out the device was not in fact patentable and not covered by the patent. (Citing cases.)" *Schnack* v. *Applied Arts Corp.*, 283 Mich. 434, 440.

From the undisputed facts just above stated relative to the application for the patent it is apparent that the first so-called denial on November 23, 1936, by no means constituted a final disposition of the application. Instead the application was continued under claims of the same nature and was pending before the patent office, even under the limited facts above stated, until September 17, 1937. When this suit was started (April 7, 1937) the time had not yet expired within which the petitioner had the right to amend the petition for a patent executed simultaneously with the license contract. So, regardless of the fact that he did amend his petition in May, 1937, it had not been finally and conclusively denied even at the time this suit was started. But clearly the amendment to the petition made in May, 1937, perpetuated the pendency of the original petition by McNeish for a patent to a date which was months subsequent to the beginning of this suit. Since these parties in making the license contract unquestionably contemplated that it should remain in force (unless

otherwise terminated by one of the parties) during the pendency of McNeish's application for a patent, we fail to understand how the rights of the licensor would have been impaired even if the application for the patent had been denied *in toto* subsequent to the institution of this suit.

Appellant admits it was liable for the royalties which accrued prior to November 23, 1936, (the date of the first denial) and which it subsequently paid; but it contends that by reason of this denial the royalty contract terminated as of November 23, 1936, and appellant is not liable for royalties subsequent to that date. We are not in accord with this contention, but on the contrary we hold that McNeish's application for a patent on an exhaust heater, such as was contemplated by the parties when they entered into the license contract, was not denied until months after this suit was started and months after the expiration of the period during which plaintiff seeks to recover royalties.

In view of the foregoing we think that appellant's contention, which we are about to note, does not affect decision of the instant case. Appellant points out that subsequent to the amendments to the petition for the patent hereinbefore noted a final amendment was made which presented a new claim known as number 19; and the patent which was ultimately allowed to McNeish covered only this claim 19. And appellant asserts that claim 19 had to do only with the method of brazing, and was not at all within or germane to any of the claims made in the petition as first filed by McNeish. Therefore appellant asserts that the application for a patent which the parties contemplated when they executed the license contract was denied. Even if in the abstract this contention is sound, still as hereinbefore pointed out the petition for the patent covering a heater of the type

manufactured by defendant was pending and was not finally denied until months after this suit was started. Therefore we are not here concerned with the controversy between these parties as to whether the patent allowed November 17, 1937, and embodying only claim 19, should or should not be held to come within the terms of the license contract.

Further, as bearing upon termination of the contract, it may be noted that at no time prior to suit did appellant notify plaintiff of cancellation or termination of the license contract because of the ruling of the patent office on November 23, 1936, or for any other reason. While appellant claims it did not know of this ruling until March 25, 1937, still even after that date it continued to recognize its contract by making payments on royalties which accrued subsequent to November 23, 1936, and by continuing to accept the personal services of plaintiff as provided in the contract until he quit about April 1, 1937. In our opinion the evidence establishes Welch's knowledge of the first denial at least as early as January, 1937. There is credible testimony to sustain the circuit judge's finding that defendant possessed this knowledge in the early part of December, 1936. Defendant, after full knowledge, continued to operate under the contract and to profit by acceptance of its beneficial provisions. Having so conducted itself, defendant and appellant could not later disavow its liability for payment of royalties. In this connection we are mindful of appellant's contention that the license contract did not require plaintiff to render personal services to defendant. But even so, admittedly the contract does contain what may be termed an optional provision, which we are about to quote, for personal services on the part of plaintiff. Having accepted such services after knowledge of the ruling of November 23,

1936, defendant cannot renounce its contract liability because it continued to accept the benefits of the contract. In fact, defendant's conduct pertaining to the license contract was no different after defendant had knowledge of the November, 1936, ruling than was its conduct prior to such knowledge. As to plaintiff rendering personal services, the pertinent portion of the contract reads:

"James J. Sunday hereby agrees to exert his best efforts to develop and engineer the McNeish heater so that it can be manufactured and placed on public sale as soon as possible. However, in view of the fact that James J. Sunday is an inventor in fields other than that of automobile heaters and desires to devote a portion of his time to inventing in other fields, it is specifically understood and mutually agreed that James J. Sunday shall be free to keep whatever office hours he desires and to work during whatever seasons of the year he may choose."

Services of the character above specified were rendered by plaintiff continuously and accepted by defendant until about April 1, 1937. Even if it were to be conceded that defendant's course of conduct in the particular just noted did not estop it from disavowing liability, still the facts stated are decidedly persuasive as to the construction that the parties themselves placed upon their contract and of the construction which the court should adopt. It was a contract which provided for both a license under which defendant was to manufacture the McNeish heater and the services to be rendered by plaintiff to defendant. Defendant's acceptance of the beneficial provisions of this contract bars its later claim of failure of consideration or termination of the contract as of November 23, 1936.

FRAUD. In the trial court and in this court defendant claimed that the license contract was vitiated

because of the fact that Mr. Welch, who represented the defendant company in making the contract, was induced to enter into the contract by reason of fraud perpetrated by plaintiff. We quote from defendant's brief:

"It is defendant's claim that Sunday represented the Novi heater (the McNeish heater) as 20 per cent. more efficient than the Sunday tube heater (a heater theretofore designed by Sunday and used by the Ford Motor Company); that Welch relied upon such representation, and signed the royalty contract in reliance thereon; and that such representation was false."

This claim of defendant presented an issue of fact in the trial court. Testimony was taken at length pro and con. Plaintiff claimed that numerous tests were made for the purpose of ascertaining the relative efficiency of these two heaters; and that on various occasions Welch was present and personally participated in these tests. In this particular plaintiff's claim was substantiated by other witnesses who were present during such tests. Welch denied being present when the comparative tests were made with a thermometer. But the evidence satisfactorily discloses that he was present on numerous such occasions; and further that at the time of making the royalty contract, as well as immediately subsequent thereto, Welch was as thoroughly informed as to the efficiency of the heater which the parties had in mind as was Sunday. The trial court found defendant did not establish its contention that it was induced to enter into this contract in consequence of the fraud alleged to have been perpetrated by plaintiff. Under this record we would not be justified in disturbing this holding of the trial court. *Alexander v. Sanders,* 279 Mich. 465.

REDUCTION OF ROYALTIES. As appears in the portion of the license contract hereinbefore quoted, defendant agreed to pay plaintiff "a royalty of 3 per cent. of all moneys received from the sale of such heaters and heater accessories used therewith." In fixing the amount plaintiff was entitled to recover in this action the circuit judge computed the amount of unpaid royalties on the basis of 3 per cent. Defendant claims this was erroneous. As one of its special defenses made in an amended answer it asserted:

"That the contract declared upon was modified by an express agreement of the parties as of December 1, 1936, so as to provide for the payment of a royalty of 1½ per cent. instead of 3 per cent."

While plaintiff admits that on or about the date above indicated there was a modification of the contract, he claims that such modification was not a reduction of the rate or amount of royalties but instead an agreement that the payment of one-half of the royalties accruing at 3 per cent. between the time of the agreement and April 1, 1937, might be deferred until the latter date. A definite issue of fact was thus presented as to which testimony was given and circumstances proven tending to sustain the contention of each of the respective litigants. In appellant's brief a forceful presentation is made of the attendant facts and circumstances which rather strongly tend to support its contention that the rate of royalty payment should have been reduced from 3 per cent. to 1½ per cent., and it is stressed that therefore "the probabilities upon this issue" are that appellant's contention is correct, and appellant asserts that its contention is sustained by a preponderance of the evidence. The record in this case is replete with conflicting testimony on practically

every material issue, including that now under consideration. At one stage of the trial the circuit judge said:

"I think that I can fairly say that anything that Mr. Sunday said which would be unfavorable to Mr. Welch, Mr. Welch is ready to deny. Anything Mr. Welch said that is unfavorable to Mr. Sunday, Mr. Sunday will be ready to deny and, as lawyers, we can take that for granted, and the court will take judicial notice of that situation."

The question of credibility of the respective witnesses was a most important, if not controlling, issue presented to the trial judge. He found that defendant had not established the claimed reduction of royalties. In that connection the trial judge in his opinion said:

"The court has found above that the royalty percentage was not reduced from 3 per cent. to $1\frac{1}{2}$ per cent. shortly before December 1, 1936, as claimed by defendant. Whether the contract was so modified presents, admittedly, a question of fact for the court's determination. In finding against the defendant, the court is influenced by the fact that there was no written memorandum of the change. While not necessary from a legal standpoint, it seems that it would have been a natural and ordinary thing for the parties to have placed the modification in written form. The original contract was, of course, in writing. The royalty provision was a most important one to both Sunday and Novi. It involved a substantial sum of money. Welch and Hickory, his associate, were shrewd and experienced business men. They would have recognized the danger of leaving so important a change to the test of a verbal arrangement. The burden was on defendant to persuade the court that the modification was made. Defendant, depending on the testimony of otherwise discredited witnesses, failed to sustain that burden."

Among other phases of the record urged in appellee's brief against this claim on the part of appellant is that it is passingly strange the defendant in the trial court did not assert this claim as a special defense until its answer was amended on January 22, 1938, nearly 10 months after this action was started and long after defendant's first answer and first amended answer were filed; further, that the record discloses no consideration which would support such an agreement even if made by plaintiff. Plaintiff also asserts that even if such a change was agreed to by the parties, he was induced to enter into it by reason of fraudulent misrepresentation made to him by defendant's representatives as to the financial condition of the defendant company at that time.

The care with which the trial judge disposed of the many issues presented by the respective parties in a long drawn out trial, and embodied in a somewhat voluminous record as presented to this court, is clearly apparent from his opinion covering 48 pages of the printed record. Under the record before us we are constrained to accept his determination of this controverted issue of fact.

VALIDITY OF MCNEISH PATENT. In appellant's brief much space is devoted to its contention that the patent finally issued to Mr. McNeish on his amended claim 19 was invalid. This same claim is urged as to another patent pertaining to exhaust heaters issued to Mr. McNeish about this same time; but we consider the issuance of this latter patent has no material bearing upon the outcome of the present case. Appellant claims these patents are invalid because in each instance, notwithstanding the patent was applied for and taken in the name of Mr. McNeish, neither of the inventions could rightfully be accredited to Mr. McNeish; but instead in each in-

stance the invention was one that originated with either Mr. Sunday or Mr. Welch. It may be conceded that appellant is right in its claim that if an application is made for a patent in the name of a person other than the actual inventor, a patent issued thereon is rendered invalid. 20 R. C. L. p. 1118; *Kennedy* v. *Hazelton,* 128 U. S. 667 (9 Sup. Ct. 202). But for the reasons hereinbefore noted we do not consider this question material to decision of the instant case. Further, since these litigants stand in the relation of licensor and licensee, the latter cannot be heard, on a record of this character, to question the validity of the patent. *Schnack* v. *Applied Arts Corp., supra; United States* v. *Harvey Steel Co.,* 196 U. S. 310 (25 Sup. Ct. 240).

Defendant's Cross Action. In a cross action defendant has asserted the right to recover from plaintiff in excess of $5,000 with accrued interest, this amount being the payments of royalties accruing subsequent to November 23, 1936, and thereafter paid by defendant to plaintiff, that being the date of the first denial of the McNeish application for a patent. Under our holding as hereinbefore indicated, defendant is not entitled to recover on its cross action.

Numerous other questions are considered in the briefs of the respective parties, but since we do not consider the determination of such questions essential to decision we forego reviewing them herein. The judgment entered in the circuit court is affirmed, with costs to appellee.

Butzel, C. J., and Wiest, Bushnell, Sharpe, Potter, Chandler, and McAllister, JJ., concurred.