54 So.2d 571

**MONTGOMERY LIMESTONE CO. v.
BEARDEN.**

**7 Div. 88.**

Supreme Court of Alabama.
Oct. 18, 1951.

———◆———

Jack Crenshaw, Montgomery, for appellant.

Beddow & Jones and G. Ernest Jones, Jr., all of Birmingham, and Ellis & Fowler, Columbiana, for appellee.

LIVINGSTON, Chief Justice.

Appellee, Peddie Bearden, instituted proceeding in the Circuit Court, in Equity, of Shelby County, Alabama, against the Montgomery Limestone Company, a corporation, appellant, to restrain appellant from the performance of certain alleged act which allegedly injured him.

In substance, the bill of complaint alleges: That appellee owns some 45 acres of land located in Shelby County; that he and his family, and his two sons and their families, live on said land in separate dwelling houses; that a part of said land is in cultivation, and a part is in pasture, and in which pasture appellee has cattle and livestock; that a natural stream of fresh, unpolluted water flows through said land; that in November, 1949, appellant began a limestone quarrying operation on lands adjacent to appellee's land and to the stream running through said land; that in its quarrying operation appellant employs a power-operated pump to remove sludge, rock, limestone, dust, sand, sediments and other impurities which gather in the quarry and discharge them into the stream of water running through appellee's land and thereby discoloring said stream, rendering it unsanitary and unfit for cattle and livestock consumption; that said power pumps are operated at night and create noises that destroy the peace, quiet and rest of appellee, his wife and tenants; that in its quarrying operations appellants use large quantities of explo-

sives, such as gunpowder, dynamite, nitroglycerin or other explosive, and that blasting operations cause rock, limestone and other debris of great quantities and large size to be cast upon appellee's lands; that appellee, his family, his tenants and their families, and his cattle are in danger of being injured by said falling objects, and that his land is being injured thereby; that appellant uses trucks, crushing machinery, air-hammers, drills and other machinery in its quarrying operations, which cause loud and continuous noises in such close proximity to appellee's dwelling and the dwellings of his tenants as to disturb his and their peace, quiet and rest; that dust, fumes and other noxious odors are caused to permeate the air above appellee's lands, and that these things are done and caused every day except Sunday; that appellants threaten to continue the pollution of said stream and blasting operations.

Appellee prays for a temporary and permanent injunction restraining the continuation of the acts complained of, and for damages.

Appellant's demurrers to the bill of complaint as a whole, and to each aspect thereof, separately and severally, were overruled and it appeals.

Appellant has treated the bill as one with the following four aspects:

"First, seeking to enjoin the pollution of a stream of water flowing through complainant's land; Second, the recovery of damages and an injunction against blasting operations; Third, an injunction restraining the respondent from frightening and disturbing the complainant and his tenants with loud noises; and Fourth, enjoining the respondent from polluting the air above complainant's land with dust, smoke and odors."

Whether or not a bill is single in scope or purpose or presents a case in more than one aspect must be determined from its allegations of fact, and we have pointed out that a bill cannot be divided up into aspects by the manner in which respondents address their demurrer to it. Smith-Howard Gin Co. v. Ogletree, 251 Ala. 366, 37 So.2d 507; Vaughn v. Pansey Friendship Primitive Baptist Church, 252 Ala. 439, 41 So.2d 403. However, the application of the rule, in determining whether a bill is single in scope or purpose, or contains two or more aspects, is sometimes difficult.

As to the instant bill, we think it more accurate to say that it contains only two aspects; the pollution of the stream with its attendant damages, and the blasting operations with its attendant damages. We will so treat it.

Appellant relies largely upon our line of cases dealing with the balancing of the interest of one person in keeping his property in status quo, and the convenience of the public in seeking industrial progress, citing Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192; Elmore v. Ingalls, 245 Ala. 481, 17 So.2d 674.

The difficulty involved in cases such as this is determining the permissible acts which a property owner must accept and acts which a court of equity will enjoin.

In the Clifton Iron case, supra, [87 Ala. 468, 6 So. 193] Chief Justice Stone said:

"Counsel have pressed the proposition that mere convenience in the use of its property by the company does not entitle it to pour down upon the appellee's land, and into the stream on his land, the debris from the washers erected by it, and we think the contention is reasonable. But it is not every case of nuisance or continuing trespass which a court of equity will restrain by injunction. In determining this question, the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction. Wood v. Sutcliffe, 2 Sim.N.S. 162; [East & W.] R. R. Co. v. [East Tennessee, V. & G.] R. R. Co., 75 Ala. 275; [Columbus & W.] R. R. Co. v. Witherow, 82 Ala. 190, 3 So. 23; 1 High, Inj. § 598; Davis v. Sowell, 77 Ala. 262; Torrey v. [Camden A.] R. Co., 18 N.J.Eq. 293; McBryde v. Sayre [86 Ala. 458], 5 So. 791 [3 L.R.A. 861].

"The court will take notice of the fact that in the development of the mineral interests in this state, recently made, very

large sums of money have been invested. The utilization of these ores, which must be washed before using, necessitates, in some measure, the placing of sediment where it may flow into streams which constitute the natural drainage of the section where the ore banks are situated. This must cause a deposit of sediment on the lands below; and while this invasion of the rights of the lower riparian owner may produce injury, entitling him to redress, the great public interests and benefits to flow from the conversion of these ores into pig metal should not be lost sight of. As said by the vice-chancellor in Wood v. Sutcliffe, supra: 'Whenever a court of equity is asked for an injunction in cases of such nature as this, (a bill to enjoin the pollution of a stream), it must have regard, not only to the dry strict rights of the plaintiff and defendant, but also to the surrounding circumstances.' "

■ And it was said in the case of Elmore v. Ingalls, [245 Ala. 481, 17 So.2d 675] supra:

" ' "The natural right of one proprietor to have the stream descend to him in its pure state must yield, in a reasonable degree, to the equal right of the upper proprietors, whose fertilization, cultivation, or occupation of their own lands, and whose use of the stream for mill and manufacturing purposes, for irrigation and domestic purposes, will tend to make the water more or less impure, especially when the population becomes dense. So it is of public importance that the proprietors of useful manufactories should be held responsible only for appreciable injury caused by their works, and not for slight inconveniences or occasional annoyances, or even some degree of interference with irrigation or agriculture." We approve the following principle extracted from Sanderson v. (Pennsylvania) Coal Co., 86 Pa. 401, (27 Am.St.Rep. 711: "The exigencies of the great industrial interests must be kept standing in view; the property of large and useful interests should not be hampered or hindered for frivolous or trifling causes. For slight inconveniences or occasional annoyances, they ought not to be held responsible, and, in dealing with such complaints, juries should be held with a steady hand."

" 'It is certainly true that owing to the wants, if not the necessities, of the present age,—of agriculture, of manufactures, of commerce, of invention and of the arts and sciences,—some changes must be tolerated in the channels in which water naturally flows, and in its adaptation to beneficial uses. Reasonable diminution of its quantity, in gratifying and meeting customary wants, has aways been permitted. So, its temporary detention for manufacturing purposes, followed by its release in increased volume, is a necessary consequence of its utilization as a propelling force. Nor must we shut our eyes to the tendency—the inevitable tendency—of these and other uses, in which water is an indispensable element, to detract somewhat from its normal purity. These modifications of individual right must be submitted to, in order that the greater good of the public be conserved and promoted. But there is a limit to this duty to yield, to this claim and right to expect and demand. The water course must not be diverted from its channel, or so diminished in volume, or so corrupted and polluted, as practically to destroy or greatly impair its value to the lower riparian proprietor.' "

■ We entertain no doubt that the foregoing principles apply to blasting operations. In that regard the rule is stated in 66 C.J.S., Nuisances, § 47, page 798, as follows: "The blasting of rock on private premises does not of itself constitute a nuisance, but whether or not it is a nuisance is a question of fact depending on the attending and surrounding circumstances. Blasting, without reference to the particular locality in which it is carried on, is not so intrinsically dangerous as to be ipso facto a nuisance. The blasting of rocks may, however, constitute a nuisance, as where it is injurious to neighboring property owners; and a landowner may be enjoined from blasting rock on his own premises for purposes of improvement, unless he proceeds with the usual safeguards which prudent men adopt to prevent injury to adjacent owners."

Our own case of Tennessee Coal, Iron & R. Co. v. Hartline, 244 Ala. 116, 11 So.2d 833, is cited as supporting and does support the foregoing text. See also East v. Saks, 214 Ala. 58, 106 So. 185; Romano v. Birmingham Ry., Light & Power Co., 182 Ala. 335, 62 So. 677, 46 L.R.A., N.S., 642.

Tested by the foregoing principles, we are clear to the conclusion that the bill as a whole and each aspect alleges facts which are without the permissible scope of acts which the law permits in the public interest.

The demurrers were properly overruled.

Affirmed.

LAWSON and STAKELY, JJ., concur.

BROWN, J., is of the opinion that the bill is single in scope and purpose and does not contain two aspects. In other respects he concurs in the opinion.