69 So.2d 671

**MARTIN STAMPING & STOVE CO., Inc., et al.**

v.

**MANLEY.**

8 Div. 676.

Supreme Court of Alabama.

Dec. 17, 1953.

John C. Martin, Tuscumbia, for appellants.

116

Watts & Salmon, Huntsville, for appellee.

LAWSON, Justice.

Hugh M. Manley, a resident of Madison County, Alabama, and Martin Stamping and Stove Company, Inc., an Alabama corporation, on April 7, 1948, entered into a written agreement, the material parts of which will be set out in the report of the case.

On August 1, 1949, the agreement of April 7, 1948, was amended in writing so as to reduce the royalties to which Hugh M. Manley was entitled from ten per cent to five per cent of the gross receipts of the articles manufactured and sold by Martin Stamping and Stove Company, Inc., under the provisions of the original agreement. When we hereafter refer to the written agreement we have reference to both the original agreement and the amendment thereto.

After the expiration of the period of time covered by the written agreement and on

January 22, 1952, Hugh M. Manley filed his bill in the circuit court of Madison County, in equity, against Martin Stamping and Stove Company, a corporation, and against Frederick H. Martin, individually and as vice-president of Martin Stamping and Stove Company.

The written agreement of April 7, 1948, is made Exhibit A to the bill and the amendment of August 1, 1949, is made Exhibit B.

The case made by the bill is hereafter stated. We will summarize some of the averments of the bill and will also quote some of its provisions.

From April 7, 1948, until April 7, 1951, the period of time covered by the written agreement, Martin Stamping and Stove Company fully complied with the terms of the provisions of the said agreement, paying to Manley all royalties due him for metal shades and awnings manufactured and sold of the character or type covered by the said written agreement.

But shortly prior to April 7, 1951, the respondents notified Manley "that after April 7, 1951, respondents would continue to manufacture such metal awnings and shades embodying the interlocking feature between panels, for which feature complainant's patent application was pending in the United States Patent Office, but that respondents would not pay complainant any royalties upon said metal shades and awnings which they would continue to manufacture and sell after said 7th day of April, 1951."

Upon being so advised by the respondents, "complainant served notice upon respondents that he had elected to treat said contract as amended, as renewed and/or extended and demanded performance of a said renewed and/or extended agreement for the additional term of three (3) years beginning on the 7th day of April, 1951."

From April 7, 1951, until the date this bill was filed, "the respondent did in truth and in fact continue to manufacture the aforesaid metal awnings and shades with said interlocking feature, and did in truth and in fact continue to sell said awnings

and shades after April 7, 1951, but wrongfully failed and refused, on demand made by complainant, to pay him the royalties provided for under 'Exhibit A', as amended."

Although the respondents continued to keep records as provided for in paragraph 3 of the written agreement, they failed and refused to deliver to complainant a complete statement of all awnings and shades manufactured and sold by them subsequent to April 7, 1951, and the respondents also "failed and refused to allow complainant to inspect the books and accounts of said corporation relating to the manufacture and sale of said awnings and shades with the interlock feature between panels since the 7th day of April, 1951, notwithstanding complainant's demand," although complainant was given that right by the provisions of paragraph 4 of the said written agreement.

It is further averred in the bill as follows:

"11. That complainant relied upon respondents complying with the provisions of Paragraphs 3 and 4 of said Exhibit to the bill, by keeping the records in said paragraphs agreed by respondents to be kept, and so relying, complainant failed to keep any record with reference to the quantity of metal awnings and shades manufactured, the dates when sold, the names of the persons to whom they were sold, the prices at which they were sold, and the amount received from each of such sales, and, therefore, complainant has no means of obtaining the information with reference to said matters other than by and through the aid of this Court for relief against respondents by way of discovery.

"12. That notwithstanding respondents cannot affirm in part the contract made 'Exhibit A', as amended, and repudiate it in part, and notwithstanding respondents cannot accept the benefits of said contract while they shirk its disadvantages, by their efforts to do so in continuing to manu-

facture, after April 7, 1951, the aforesaid metal awnings and shades, and by refusing to pay complainant royalties of 5% derived from the sale of said awnings, respondents renewed and/or extended said 'Exhibit A', as amended, and thereby bound themselves to manufacture under said renewed and/or extended contract a minimum of 5,000 awnings and shades a year for an additional three year period. Complainant further avers that subsequent to respondents' giving complainant notice that they would continue to manufacture said metal awnings after April 7, 1951, but would not pay complainant royalties from the sale of said metal awnings, complainant served notice upon respondents that he had elected to treat said contract, as amended, as renewed and/or extended, and demanded performance of a said renewed and/or extended agreement for the additional term of three (3) years beginning on the 7th day of April, 1951. And complainant further avers that by reason of the aforesaid notice and conduct on the part of respondents, and the notice to respondents of the election made by complainant, the respondents have become bound to manufacture a minimum of 5,000 metal awnings and shades per year for each year of said additional three year period, for which said contract has been renewed and/or extended; and that complainant in equity and good conscience is entitled to have this Court grant him relief by way of specific performance by respondents of said renewed and/or extended agreement.

"13. That if complainant is mistaken in his averments in Paragraph No. 12 next above, to the effect that complainant and respondents by their conduct, have renewed or extended the amended contract made Exhibit to the bill, then he avers, in the alternative, that he disclosed to the respondents, in confidence, his method of manufacturing metal shades and awnings with interlock between panels, for which he had made application for letters patent, and that the respondents in continuing the manufacture of said metal awnings and shades after April 7, 1951, and sale of same, refusing to pay complainant the royalties fixed by said agreement, the respondents by said wrong became liable to complainant for all profits realized by them from said manufacture and sale from the 7th day of April, 1951 to the date of the filing of this bill, and for all damage suffered by complainant for said breach of confidence by the respondents. Complainant further avers that equity will not permit respondents to wrongfully enrich themselves at the expense of complainant; that complainant has no information as to the profits accruing to respondents from their said wrongs, and no way of obtaining such information except this Court grant to complainant relief by way of discovery, requiring the respondents to furnish complainant said information.

"14. That if complainant is mistaken in the averments of Paragraph 13, next above, to the effect that he is entitled to recover from respondents all profits and damages realized by respondents from their wrong in continuing to manufacture the aforesaid metal awnings and shades from April 7, 1951, and at the same time refusing to pay the royalties provided for by 'Exhibit A', as amended, then he alleges in the alternative that he is entitled to a reasonable royalty based upon the gross amount realized by respondents on all metal awnings made and sold between April 7, 1951 and to the date of the filing of this bill; and that complainant having no information as to the number of awnings and shades manufactured and sold, and no means of obtaining such information other than by discovery against the respondents who do have such information, he is entitled to have relief by way of discovery against respondents showing all moneys collected by respondents from the manufacture and

sale of the aforesaid metal awnings and shades from April 7, 1951 to the date of the filing of this petition.

"15. That if complainant is mistaken in the averments of Paragraph 14, above, to the effect that he is entitled to a reasonable royalty to be paid him by respondents out of the manufacture and sale of the metal awnings and shades referred to in said paragraph, then he alleges in the alternative that he is entitled to recover of the respondents a royalty of 5% on the gross receipts from metal awnings and shades manufactured and sold by the respondents since April 7, 1951 to the date of the filing of this bill. And complainant further avers that he kept no records of the number of metal awnings and shades manufactured and sold by the respondents from April 7, 1951 to the date of filing suit, but that the respondents did keep such records as he is informed and believes, and are in a position to furnish said information as the basis for determining the amount, or amounts, which complainant is entitled to recover against the respondents for and on account of the aforesaid wrongs of the respondents in continuing to manufacture said metal awnings and shades after April 7, 1951, and to the time respondents ceased such manufacture and sale, and refusing to pay royalty thereon, to complainant."

Aside from the prayer for process, the prayer of the bill is as follows:

"And complainant further prays that Martin Stamping & Stove Company, a corporation, Frederick H. Martin, as Vice-President of Martin Stamping & Stove Company, a corporation, and Frederick H. Martin, individually, and each of them, be required to answer the interrogatories numbered from 1 to 15, both inclusive, which are hereto attached and marked 'Exhibit C' and made a part of this bill of complaint; and complainant avers that the facts and information sought to be established by the answers to the interrogatories attached to this bill are material, are indispensable to complainant in the prosecution of this his suit, are within the knowledge of the other parties, and that complainant cannot make proof of the facts alleged in the bill as to which discovery is sought in any other way than by respondents' answers.

"Complainant further prays that upon a final hearing, on proof, your Honor will by its decree entered in this cause, declare the amended contract made Exhibit to this bill:

"(a) Created between the parties thereto a joint enterprise, and made them joint adventurers, imposing upon them the obligation to deal with each other in the utmost good faith, and that said contract may not be by respondents affirmed in part, and repudiated in part; that respondents may not accept the benefits of said agreement and at the same time shirk its disadvantages as they have done by continuing after April 7, 1951, to manufacture and sell metal shades and awnings covered by said contract, and refusing to pay royalties thereon to complainant; that respondents, in attempting to do so have worked a renewal or extension of said amended agreement for a period of three (3) years from April 7, 1951, giving complainant the right to require the respondents to specifically perform said renewed and/or extended agreement in accordance with its terms and that this Court, by its decree require specific performance on respondents' part of the renewed and/or extended agreement.

"(b) Complainant further says that if he is mistaken in his right to the relief prayed for in Paragraph (a) above, then he prays, in the alternative, that this Court by its decree; declare complainant entitled to judgment against the respondents for such sum as the evidence shows respondents' profits to have been from the manufacture and sale of metal awnings and shades from April 7, 1951 to the date

of the filing of this bill, and for all damages the evidence shows complainant to have suffered as the proximate consequence of respondents' aforesaid wrongs, and that this Honorable Court enter judgment therefor against the respondents.

"(c) Complainant further says that if he is mistaken in the relief prayed for in Paragraph (b) next above, then he alleges in the alternative, that he is entitled to a reasonable royalty based upon the gross sales realized from the manufacture and sale of metal awnings and shades by the respondents from April 7, 1951, to the date of filing this bill, and he prays that the Court ascertain and determine from the evidence the amount of such gross sales, and by its decree award complainant judgment against the respondents therefor.

"(d) Complainant further says that if he is mistaken in the relief prayed for in Paragraph (c) next above, then he alleges in the alternative, that he is entitled to a royalty of 5% on the gross receipts realized by respondents from the manufacture and sale of metal shades and awnings by the respondents from April 7, 1951, to the time of filing of this bill; and complainant further prays that this Honorable Court ascertain and determine the amount of said gross receipts and award complainant judgment at 5% against the respondents.

"And complainant prays for such other, further, general and additional relief as the facts and circumstances show him to be entitled; and for an accounting by respondents."

On February 18, 1952, Martin Stamping and Stove Company filed its demurrer. On the same day the respondent Frederick H. Martin, in his individual capacity and as an officer of the respondent corporation, filed demurrer. Additional grounds of demurrer were filed by the respondent Martin on May 16, 1952.

The trial court on June 12, 1952, rendered a decree overruling the demurrers of both respondents. It was pointed out in that decree that the demurrers were overruled because they were addressed only to the bill as a whole and the court was of the opinion that "under the allegations thereof said bill contains equity as a bill for equitable discovery and relief, in that said bill sufficiently alleges a wrongful appropriation by respondents of complainant's method of manufacturing metal awnings, the details of which were disclosed in confidence to respondents * * * and since one aspect of the bill is good the demurrer of each respondent to the bill should be overruled."

After obtaining the permission of the trial court, the respondents on July 10, 1952, jointly and severally, filed an instrument which is termed "Additional Demurrers," wherein a number of grounds of demurrer are addressed to the bill as a whole and grounds of demurrer are properly directed to each of the four aspects which the demurrants construed the bill to contain.

The so-called aspects are pointed out in the decree of the trial court rendered on August 1, 1952, which decree in pertinent parts reads:

"This cause coming on to be heard is submitted for decree upon the additional demurrer of the respondents, jointly and severally, filed herein on July 10, 1952, to the original bill herein. Said demurrer being submitted to the Court and having been considered by the Court, it is ordered, adjudged and decreed by the Court as follows:

"(1) That the demurrer to the bill of complaint as a whole is overruled.

"(2) That the demurrer 'to that aspect of the complainant's bill of complaint seeking equitable discovery and accounting and relief' is overruled.

"(3) That the demurrer 'to that aspect of the bill seeking to recover the reasonable royalty based upon the gross sales realized from the manufacture and sale of metal awnings by the,

respondents from April 7, 1951', is overruled.

"(4) That the demurrer 'to that aspect of the bill seeking a five per cent royalty on the gross receipts realized by respondents from the manufacture and sale of metal awnings and shades by the respondents from April 7, 1951' is overruled.

"(5) That the demurrer 'to that aspect of complainant's bill of complaint which seeks specific performance by the respondents of the contract marked Exhibit A to the complainant's bill of complaint' is sustained. * *"

From the decree of August 1, 1952, the respondents below have appealed to this court. By separate assignments of error the respondents challenge the action of the trial court in overruling demurrer to the bill as a whole and in overruling the demurrer to each of the so-called aspects except that seeking specific performance to which, as shown above, demurrer was sustained.

The complainant below does not here question the ruling of the trial court sustaining demurrer addressed to that aspect of the bill seeking specific performance.

■ A bill in equity should be separated into paragraphs and numbered for convenience in answering. Equity Rule 11, Code 1940, Title 7, Appendix, p. 1050. However, the numbered paragraphs have no necessary relation to the causes of action presented and no necessary relation to its aspects, which are counterparts of counts in a complaint at law but not so designated. The aspects as such are neither physically segregated nor numbered. They are ascertained only by an analysis of the bill and by a process of mental segregation. See "Aspects of a Bill in Equity," by Judge E. M. Creel, The Alabama Lawyer, July 1951. The manner in which a demurrant addresses his demurrer to a bill does not determine its aspects. Woods v. Allison Lumber Co., 258 Ala. 282, 62 So.2d 229; Montgomery Limestone Co. v. Bearden, 256 Ala. 269, 54 So.2d 571, and cases there cited.

The effect of complainant's bill is to say to the corporate respondent, you have no right to use the mechanical device which I invented and which you obtained by virtue of the license contract unless you pay me royalties, even though the period of time during which you expressly agreed to pay me royalties has expired.

And complainant has called upon a court of equity to require the corporate respondent, Martin Stamping and Stove Company, to pay him royalties on all metal shades and awnings manufactured and sold by it since April 7, 1951, on which the said mechanical device has been used.

In order to have a court of equity so decree, complainant sought to call into exercise a well-known form of equitable relief, specific performance, by averring that the action of the corporate respondent in continuing to use the said mechanical device after April 7, 1951, constituted an extension and/or renewal of the said license contract. On that theory complainant sought to recover of the corporate respondent a royalty equal to five per cent of gross receipts, the amount stipulated in the license contract as amended.

But the trial court by its decree has said, in effect, that the allegations of the bill are insufficient to make out a case for specific performance. As shown above, that holding is not questioned here.

But complainant was not content to base his right to relief solely on the prayer for specific performance. He has attempted to frame the allegations and prayer of his bill so as to invoke another form of equitable relief, discovery in aid of a legal claim and an accounting. On that theory he seeks to recover of the corporate respondent a sum equal to its profits derived from the manufacture and sale of metal awnings and shades from April 7, 1951, to the date of the filing of the bill or reasonable royalties or royalties equal to five per cent of the gross proceeds derived from such sales.

■ In Young v. Dean, 253 Ala. 211, 215, 44 So.2d 12, 16, we said:

"The rule is stated in the case of Cleveland Storage Co. v. Guardian

Trust Co., 222 Ala. 210, 131 So. 634, citing many cases, that when the effort is to obtain a discovery in aid of a purely legal demand it is necessary to show that complainant does not know some of the facts essential to support an action at law and/or has no legal means of ascertaining and proving them except by an answer of respondent. That is in effect that such facts are peculiarly known to respondent and cannot be otherwise proven. Merrill v. Ritch, 235 Ala. 155, 177 So. 886; Employers Ins. Co. of Alabama v. Rhodes, 240 Ala. 226, 198 So. 616; Pate v. Bruner, 243 Ala. 648, 11 So.2d 356; Callahan v. Auburn Production Credit Ass'n, 240 Ala. 104, 197 So. 347, 129 A.L.R. 893.

"In order to sustain a bill for discovery and accounting, which seeks no other equitable relief, properly alleged, it is sufficient if it shows facts which sustain an allegation that the accounts are complicated, when on one side only, or trust relations exist between the parties, or a necessity for a discovery of the matters wholly within the respondent's knowledge, or such fraud or wrong dealing as would authorize equity to take cognizance thereof. City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402; Comer v. Birmingham News, 218 Ala. 360, 118 So. 806; Ingram v. People's Finance & Thrift Co., 226 Ala. 317, 146 So. 822; First National Bank of Oneonta v. Lowery, 234 Ala. 56, 173 So. 382; Compton v. Gilder, 176 Ala. 309, 58 So. 271."

In Erswell v. Ford, 205 Ala. 494, 497, 88 So. 429, 432, it is said:

" * * * To entitle complainant to a bill for discovery, he must first show right to relief, a cause of action, a legal right; and if he avers facts showing a cause of action, a legal right, then he must aver facts to entitle him to a bill for discovery, in order to maintain his suit in equity, for the production of testimony and documents to establish his cause of action. * * * "

We come now to consider those grounds of demurrer, properly addressed, which may be sufficiently discussed in brief filed on behalf of appellants to justify treatment here which in effect take the point that the averments of the bill are not sufficient to show that complainant has a cause of action, a legal right.

As indicated above, the contract with which we are here concerned is a license whereby the corporate respondent, for the consideration expressed, is given the right to use in the manufacture of metal shades and awnings the mechanical device, for which complainant had a patent application pending.

Such a license may be given before issuance of the patent. Fur Grooving & Shearing Co. v. Turano, D.C., 39 F.Supp. 877; Davis v. Kittle Mfg. Co., 134 Cal.App. 254, 25 P.2d 253; Sunday v. Novi Equipment Co., 290 Mich. 539, 287 N.W. 909; Schnack v. Applied Arts Corp., 283 Mich. 434, 278 N.W. 117; Kimmig v. Talmadge, 231 App.Div. 646, 248 N.Y.S. 484. See Sherrill v. Alabama Appliance Co., 240 Ala. 46, 197 So. 1.

Suits to recover royalties due under such contracts grow out of the contractual relationship and are not based on infringement; hence, the state courts have jurisdiction. Finnerty v. Wallen, D.C., 77 F.Supp. 508; Seagren v. Smith, 63 Cal. App.2d 733, 147 P.2d 682.

Beyond any question, in entering into the license contract these parties contemplated that each of them should have the rights specified in the contract and the benefits accruing thereunder during the time complainant's application for a patent was pending, unless the contract was terminated in the meantime.

But appellants contend that since the contract has terminated and the patent has not been granted, they are free to use complainant's invention without payment of royalties to him. We cannot agree. The bill alleges that the application for patent is still pending and we are not here dealing with the rights of the parties with respect

to future royalties in the event the patent should be finally denied. It may be that under the terms of the particular contract here involved, if the patent application should be denied the corporate respondent might not be liable for royalties. But see Sunday v. Novi Equipment Co., supra.

■ But as long as the application for patent is pending we can see no reason why complainant is not entitled to reasonable compensation for the use of his property, his invention. No question of infringement is involved—the corporate respondent is liable under the circumstances by reason of an implied contract. In re Norcor Mfg. Co., 7 Cir., 109 F.2d 407. See In re Michigan Motor Specialties Co., D.C., 288 F. 377; Seagren v. Smith, supra.

We hold, therefore, that the grounds of demurrer taking the point that it is not made to appear from the averments of the bill that complainant has a cause of action were not well taken and were properly overruled.

Appellants contend that the trial court erred in not sustaining the grounds of demurrer which take the point that the bill, being for discovery and relief, avers no facts showing that the discovery is necessary to prove any facts upon which complainant relies for relief; or that he cannot otherwise prove each and every matter sought to be discovered.

Complainant seeks to discover the number of metal shades and awnings manufactured and sold by the corporate respondent since April 7, 1951, on which his mechanical device has been used and the amount of money received therefor. The amount of his recovery necessarily depends upon such proof.

■ Complainant avers that he has no records of such sales nor any information bearing thereon; that respondents do have such information and that he has been refused access to respondents' books and records. It is averred: "Complainant has no means of obtaining the information with reference to said matters other than by and through the aid of this Court for relief against respondents by way of discovery."

Standing alone, the language just quoted might be said to be a mere conclusion of the pleader, but taken in connection with the facts averred we are of the opinion the averment is more than a mere conclusion. Wood v. Hudson, 96 Ala. 469, 11 So. 530. See Sherrill v. Alabama Appliance Co., supra. The remedy of discovery by interrogatories at law does not deprive equity of its jurisdiction on proper averment. Cleveland Storage Co. v. Guardian Trust Co., supra. See Shackelford v. Bankhead, 72 Ala. 476; Virginia & A. Mining & Manufacturing Co. v. Hale & Co., 93 Ala. 542, 9 So. 256. We are of the opinion that the grounds of demurrer referred to last above were overruled without error.

■ A bill need not offer to do equity which shows that the complainant is not required to do anything in good conscience as a condition to the granting of relief. Head v. Carroll, 230 Ala. 688, 163 So. 328; Davis v. Anderson, 218 Ala. 557, 119 So. 670. Such is the bill in the instant case, where it is apparent on its face that under no circumstances would any liability for any amount be imposed upon the complainant as a condition to relief.

■ As regards the grounds of demurrer challenging certain sections of the bill as being indefinite and lacking the requisite certainty of averment, it may be observed that while it is necessary for bills in equity to have such degree of certainty that respondent may be directly informed of the nature of the claim made against him and of what he is called on to answer, the same precision of statement is not generally required in equity as at law, and the certainty with which averments must be made will depend on the particular case. Wood, Wire & Metal Lathers, etc., v. Brown & Root, Inc., 258 Ala. 430, 63 So.2d 372.

In Horn v. Peek, 246 Ala. 241, 243, 20 So.2d 234, 235, we said: "* * * It is immaterial what particular language is used in a bill seeking relief and what legal conclusions are drawn by the pleader, if the facts are alleged and a distinct equity power is authorized and sought expressly or impliedly."

Ordinarily, surplusage does not render a pleading subject to demurrer. Buettner Bros. v. Good Hope Missionary Baptist Church, 245 Ala. 553, 18 So.2d 75.

Prolixity is reached by motion to strike rather than by demurrer. Alabama Power Co. v. Thompson, 250 Ala. 7, 32 So. 2d 795, 9 A.L.R.2d 974; Atlantic Coast Line R. Co. v. Carroll, 208 Ala. 361, 94 So. 820. See Worthington v. Miller, 134 Ala. 420, 32 So. 748; Sims, Chancery Practice, § 228.

Motion to strike has been recognized as proper method of getting impertinent matter out of a bill. Boozer v. Blake, 245 Ala. 389, 17 So.2d 152.

We are of the opinion that none of the grounds of demurrer insisted on in brief were well taken and that the decree of the trial court should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.